IN RE DAVIS.

[Cite as *In re Davis* (1999), 84 Ohio St.3d 520.]

(Nos. 98–50 and 98–98—Submitted October 14, 1998 at the
Mercer County Session—Decided March 3, 1999.)

*Michael C. Jones,* for appellants.

*Joseph R. Burkard,* Paulding County Prosecuting Attorney, for appellee.

*James M. Sponseller,* guardian *ad litem.*

COOK, **J.** The issue certified to this court is "whether the seven-day limit within which a juvenile court must enter its disposition of a child adjudicated as abused, neglected or dependent under R.C. 2151.35 also applies to motions filed by an agency under R.C. 2151.414 prior to the September 1996 amendment to that statute." We find that the seven-day limit does apply but that it is directory, not mandatory, and that either party may seek to enforce the statutory time requirement through a writ of procedendo.

I

The seven-day limit in question appears in the Revised Code section delimiting the procedure for dispositional hearings for children adjudicated abused, neglected or dependent. R.C. 2151.35(A) provides that after a child has been so adjudicated, a juvenile court must conduct a dispositional hearing pursuant to R.C. 2151.35(B). R.C. 2151.35(B)(3) requires that after the dispositional hearing is concluded, "the court shall enter an appropriate judgment within seven days." Revised Code sections regarding permanent custody decisions also cross-reference this time limit. R.C. 2151.413 states that when an agency such as DHS has had temporary custody for at least six months of an abused, neglected or dependent child, that agency may request permanent custody pursuant to R.C. 2151.414. Pre-amendment R.C. 2151.414(A) specified no time limit but provided

that where an R.C. 2151.413 motion for permanent custody is filed, "[t]he court shall conduct a hearing in accordance with section 2151.35." Because R.C. 2151.35(B)(3) requires a decision within seven days following the conclusion of a dispositional hearing, judges ruling on R.C. 2151.413 permanent custody motions must meet that time limit where the motion was filed prior to the September 18, 1996 amendment to R.C. 2151.414. Thus, Judge McMaster should have issued his ruling within seven days after the date the matter was submitted to him; he took seventeen months.

## II

Appellants argue that the seven-day constraint is mandatory and that the juvenile court's failure to adhere to it deprived the court of authority (we read "authority" as indistinguishable from "jurisdiction") to determine permanent custody. We, however, view the provision as directory rather than mandatory, leaving the juvenile court's jurisdiction unaffected by the untimeliness of its decision.

It is true that where a statute contains the word "shall," the provision will generally be construed as mandatory. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. "A mandatory statute may be defined as one where noncompliance * * * will render the proceedings to which it relates illegal and void." See *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 471–472, 32 O.O. 542, 544, 66 N.E.2d 531, 534.

But, even with "shall" as the operative verb, a statutory time provision may be directory. "As a general rule, a statute which provides a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure." *Id.* at 472, 32 O.O. at 544, 66 N.E.2d at 534. This is so "unless the nature of the act to be performed or the phraseology of the statute or of other statutes relating to the same subject-matter is such that the designation of time must be considered a limitation upon the power of the officer." *State ex rel. Smith v. Barnell* (1924), 109 Ohio St. 246, 255, 142 N.E. 611, 613.

The statute reviewed here fits the general *Farrar* rule for construing that statute as directory; it is a time restriction on the performance of an official duty. And, the language and purpose of the provision do not trigger the *Barnell* exception to this general rule because R.C. 2151.35 does not include any expression of intent to restrict the jurisdiction of the court for untimeliness.

Finding the provision directory makes sense from a practical standpoint as well. If we decided that the time constraint is mandatory and that juvenile

courts therefore lack jurisdiction to decide these cases from the eighth day following submission of the issue, we would defeat the very purposes the time limit was designed to protect. If there were jurisdictional consequences, a missed deadline would require either that the child be returned to a potentially risky home situation, or that a new complaint be filed and the process begun anew, delaying the final resolution of the issue even further. Such consequences would not serve the interests of children, who are too often relegated to temporary custody for too long.

In light of the rule stated in *Farrar* and the consequences that would result otherwise, then, we conclude that the seven-day time limit set forth in R.C. 2151.35(B)(3) is directory, not mandatory, and failure to comply with it will not deprive a court of jurisdiction to decide the issue.

### III

Although we hold that the seven-day time limit is directory rather than mandatory, such a finding does not render the provision meaningless. Where a juvenile court delays its ruling beyond the seven days · allowed by R.C. 2151.35(B)(3), the time constraint in the statute serves as justification for seeking a writ of procedendo.

A petition for a writ of procedendo "is appropriate when a court has either refused to render a judgment or has unnecessarily delayed proceeding to judgment." *State ex rel. Miley v. Parrott* (1996), 77 Ohio St.3d 64, 65, 671 N.E.2d 24, 26. " '[A]n inferior court's refusal or failure to timely dispose of a pending action is the ill a writ of procedendo is designed to remedy.' " *State ex rel. Dehler v. Sutula* (1995), 74 Ohio St.3d 33, 35, 656 N.E.2d 332, 333, quoting *State ex rel. Levin v. Sheffield Lake* (1994), 70 Ohio St.3d 104, 110, 637 N.E.2d 319, 324. The seven-day limit set forth in R.C. 2151.35(B)(3) defines what is and is not a "timely" disposal of a permanent custody action, lending justification to any petition filed after the expiration of that period.

This court previously reached this same conclusion under similar circumstances in *Linger v. Weiss* (1979), 57 Ohio St.2d 97, 11 O.O.3d 281, 386 N.E.2d 1354. In that case, the juvenile court had violated two separate time requirements set forth in the Juvenile Rules. We concluded there that "[t]he proper remedy in such a case is a complaint for a writ of procedendo." *Id.* at 100, 11 O.O.3d at 283, 386 N.E.2d at 1356, fn. 5. And at least one Ohio appellate district has already reached a like conclusion in a case analogous to the current one. In *In re Fleming* (1991), 76 Ohio App.3d 30, 600 N.E.2d 1112, the Sixth Appellate District found that "the proper remedy in cases such as this, where a trial court fails to meet the seven-day requirement imposed by R.C. 2151.35(B)(3) * * * would be for counsel for the parents or counsel for [the agency] to file, upon expiration of

the seven-day time period, a petition for a writ of procedendo." *Id.* at 40–41, 600 N.E.2d at 1119.

Appellants here claim prejudice and a due process violation from the inordinate delay by Judge McMaster between the time of the hearing and the date of the decision. Given the availability of this avenue for relief from prejudicial delay, however, it follows that any party who has not petitioned for a writ of procedendo is estopped from complaining on appeal that delay by the juvenile court in excess of the seven days allowed by R.C. 2151.35(B)(3) prejudiced that party or violated that party's due process rights. At any reasonable time following the expiration of seven days, appellants could have forced the court to act by seeking a writ of procedendo. Appellants failed to do this. Their failure to avail themselves of this remedy precludes them from now claiming that they suffered from the delay.

### IV

Accordingly, the judgment of the Paulding County Court of Appeals is affirmed.

*Judgment affirmed.*

F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

DOUGLAS and RESNICK, JJ., concur separately.

MOYER, C.J., and PFEIFER, J., dissent.

---

LUNDBERG STRATTON, J., concurring. I respectfully concur in the opinion of the majority, but write separately to express my outrage at the extraordinary delay in this case. In August 1993, these children were first removed from a home where, clearly, they were at serious risk. They have now languished in foster care for over five years. Seventeen months of that delay lies clearly at the feet of Judge McMaster, who instead of upholding his statutory duty to decide this case in *seven days,* despite DHS's repeated attempts to bring it to his attention, did not rule on the matter for *seventeen months.*

Seventeen months is an eternity in the life of a child. Such a delay is inexcusable. We in the judicial system must be zealous to ensure that the lives of children will not be disrupted by failure of a judge to perform his or her duties in a timely fashion.

---

ALICE ROBIE RESNICK, J., concurring. I concur in the syllabus and in the judgment but write separately to underscore the reason that the seven-day decision requirement specified in R.C. 2151.35(B)(3) is directory rather than mandatory.

This court has previously discussed the issue of when a statute is to be directory or mandatory in *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, where the court held at paragraph two of the syllabus:

"As a general rule, statutes which relate to the essence of the act to be performed or to matters of substance are mandatory, and those which do not relate to the essence and compliance with which is merely a matter of convenience rather than substance are directory."

The court then proceeded to hold at paragraph three of the syllabus:

"As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure; and, unless the object or purpose of a statutory provision requiring some act to be performed within a specified period of time is discernible from the language employed, the statute is directory and not mandatory."

From the foregoing it is readily apparent that the directory-only application arises where the essence of a statute is not involved and the time for doing the act is prescribed only for the orderly performance of a judicial act.

"Ordinarily, a statutory requirement that an act be performed is mandatory while the time for performing the act is directory. *This is especially true of a provision that a tribunal render a decision within a designated time.* Failure to do so does not deprive the tribunal * * * of its jurisdiction to act. See *Kyes v. Pennsylvania R.R. Co.* (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503." (Emphasis added.) *In re Raymundo* (1990), 67 Ohio App.3d 262, 268, 586 N.E.2d 1149, 1153.

Consistent with this view, courts have concluded that time limits directed at court actions are generally treated as directory. *State ex rel. Turrin v. Tuscarawas Cty. Court of Common Pleas* (1966), 5 Ohio St.2d 194, 196, 34 O.O.2d 350, 351, 214 N.E.2d 670, 671; *James v. West* (1902), 67 Ohio St. 28, 65 N.E. 156, paragraph three of the syllabus. Such time limits are useful and certainly binding on the conscience of judges, but they "are not matters affecting their jurisdiction." *Id.* at 44, 65 N.E. at 158.

Had the General Assembly intended the seven-day decision time to be of the essence and as a result jurisdictional, it certainly knew how to so indicate. In R.C. 2151.35(B)(1), the General Assembly requires dismissal when the disposi-

tional hearing is not held within the statutory time frame. By contrast, it is not discernible from the language of R.C. 2151.35(B)(3) that a court is without jurisdiction to render a decision beyond the seven days. We cannot and should not read into this section of the statute language that is not there. The seven-day provision obviously was intended to encourage the expeditious handling of these cases. Certainly it was not intended to divest a court of jurisdiction if a decision was rendered on the eighth day or beyond. Judges should be encouraged to render decisions within seven days, but with the congestion of most court dockets, that is not always possible.

As a general rule, therefore, provisions dealing with the timing of a judicial act should be treated as directory. *Farrar, supra,* 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531. Such provisions are generally meant to secure the prompt resolution of the public business, not to create a jurisdictional bar that intolerably delays the resolution of that business. *Id.; James, supra,* 67 Ohio St. at 44, 65 N.E. at 158.

I concur in the holding of the syllabus that the seven-day time limit set forth in R.C. 2151.35(B)(3) is directory and in the judgment.

Douglas, J., concurs in the foregoing concurring opinion.

———————

Moyer, C.J., dissenting. I respectfully dissent and would reverse the judgment of the court of appeals. R.C. 2151.35(B)(3) requires a juvenile court, responding to an agency request for permanent custody, to enter judgment within seven days after a dispositional hearing is conducted pursuant to R.C. 2151.35(B). Failure to adhere to this time limit divests the court of its authority to rule on the pending motion.

The relevant portion of the statute provides:

"After the conclusion of the dispositional hearing, the court shall enter an appropriate judgment within seven days * * *." R.C. 2151.35(B)(3).

It is a well-established rule that, "[i]n statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a *clear and unequivocal* legislative intent that they receive a construction other than their ordinary usage." (Emphasis added.) *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus. "Although it is true that in some instances * * * 'shall' must be construed to mean 'may,' " *Dennison v. Dennison* (1956), 165 Ohio St. 146, 149, 59 O.O. 210, 211, 134 N.E.2d 574, 576, "the intention of the General Assembly that ['shall'] shall be so construed must clearly appear * * * from a general view of the statute under consideration *. * * *, as where the

manifest sense and intent of the statute require [such construction]." (Citations omitted.) *Dorrian*, 27 Ohio St.2d at 108, 56 O.O.2d at 61, 271 N.E.2d at 838.

The command of R.C. 2151.35(B)(3) is that the court shall enter an appropriate judgment within seven days after the conclusion of the dispositional hearing. The plain words of the statute are not qualified by a "clear and unequivocal. legislative intent" that the word "shall" is anything other than a mandatory requirement of the statute. Indeed, an examination of the entire statute leads only to the conclusion that a mandatory construction is intended. .

The word "shall" appears seven times within the text of R.C. 2151.35(B)(3), while the word "may" appears once. Frequent repetition of "shall" in the statute supports the conclusion that the General Assembly intended a mandatory construction. See *Dorrian*, *supra*, at 107, 56 O.O.2d at 60–61, 271 N.E.2d at 837; *Cleveland Ry. Co. v. Brescia* (1919), 100 Ohio St. 267, 270, 126 N.E. 51, 52. Furthermore, the use of both "shall" and "may" in the same section "clearly reflect[s] a legislative intent that the two words be given their usual statutory construction." *Dorrian*, 27 Ohio St.2d at 108, 56 O.O.2d at 61, 271 N.E.2d at 838. I agree with the court of appeals in *In re Fleming*, which noted that nothing in the statute "supports the conclusion that the legislature intended the seven-day requirement of R.C. 2151.35(B)(3) to be merely directory despite the use of the word 'shall.' " *In re Fleming* (1991), 76 Ohio App.3d 30, 39, 600 N.E.2d 1112, 1118.

I am not unmindful that this application of the statute may raise an appropriate concern, as these are often cases where a child's welfare may be in danger. However, R.C. 2151.35(B)(1), which sets the time limits within which the dispositional hearing must be conducted, states that "[i]f the dispositional hearing is not held within the period of time required * * *," the court is required, upon its own motion or the motion of any party or guardian ad litem, to "dismiss the complaint without prejudice." Dismissal without prejudice allows a party to resubmit its complaint. The General Assembly found it appropriate to provide for a dismissal without prejudice in order to balance the parents' rights and interests with the child's interests.

In providing for a timely hearing in the trial court, the General Assembly has recognized that a delay between the hearing and the judgment may prejudice the parties, yet by providing for dismissal without prejudice, it has reaffirmed that a well-founded complaint should have the opportunity to be judged on its merits. Surely, the same rationale is applicable to the mandatory requirements of R.C. 2151.35(B)(3), especially in view of the basic tenet that "disposition of cases on their merits is favored in the law." *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 371, 678 N.E.2d 530, 534.

I am also mindful of the observation that the seven-day period from hearing to disposition by the trial court is a very short time in which the trial court must issue its dispositional order. However, in the absence of a due process or other constitutional infirmity in the statute, it is not for this court to determine that such a statement of the law is ill-advised. Rather, it is apparent that the General Assembly responded to a problem, not uncommon in some courts with jurisdiction over the placement of children, in which children are left in legal limbo for months and indeed sometimes years. It is not the province of this court to, in effect, tell the General Assembly that we do not agree with its attempt to remedy this problem in the judicial process by interpreting the words of a statute in a manner clearly not intended by the General Assembly.

For the foregoing reasons, I respectfully dissent from the majority holding and would reverse the judgment of the court of appeals.

PFEIFER, J., concurs in the foregoing dissenting opinion.