OPINION
The instant appeal emanates from a final judgment of the Juvenile Division of the Ashtabula County Court of Common Pleas. Appellant, Deborah Veverka, requests the reversal of the trial court's determination to grant temporary legal custody of her child, Seth Veverka, to appellee, Celena Veverka.
Appellant and Phillip Veverka were married for approximately twenty-five years and had five children: appellee, Aaron, Mara, Evan, and Seth. Throughout the entire course of their marriage, the Veverkas lived in northeastern Ohio, including Cuyahoga County and Geauga County.
Sometime in the early 1980's, appellant met Janice Keller. Because they shared certain religious beliefs and their respective children were involved in the same club, the friendship between appellant and Keller began to grow during the ensuing years. Finally, when Keller suffered a serious neck injury in August 1993, appellant decided to live with Keller at the Keller residence in Chesterland, Ohio.
Initially, appellant only took her two youngest children, Evan and Seth, to reside with her at the Keller home. However, after a short period of time, appellant decided to have her other three children join her in living with the Kellers.
During this same general time period, both appellant and Keller chose to divorce their respective husbands. Accordingly, as of October 1993, ten persons were residing at the Keller home, including appellant, Keller, the five Veverka children, and the three Keller children. Moreover, after living at the Chesterland residence for a few weeks, appellant and Keller decided to move both of their respective families to a farmhouse in Windsor, Ashtabula County, Ohio.
Over the next few months, a belief began to arise amongst the ten residents of the Windsor farmhouse that four of the Veverka children, including Seth, were possessed by demons. This belief was predicated in part upon an alleged dream appellee had had about being sexually abused by her father and other "satanists." As the belief in the demons grew in the two families, they started to give names to the individual demons in the children. For example, the demon supposedly inside Seth was called "Rocca" or "Roka."
In attempting to "save" the children from the demons, appellant and Keller began to hold "sessions" with the children in their bedroom during the night. The subject of the majority of the sessions was appellee and her alleged dream of sexual abuse. As part of these sessions, appellant and Keller would question appellee repeatedly as to whether she had any memory of being abused by her father during her early childhood.
In addition to the sessions, appellant took appellee to see various psychologists and counselors in Ashtabula County. Although the counseling did not help appellee, it did alert certain public officials as to the events which were taking place inside the Windsor residence. As a result, caseworkers of the Ashtabula County Children Services Board started to visit the farmhouse and assess the situation.
After the hysteria about the alleged demons had lasted for approximately eighteen months, appellee ran away from the Windsor home in April 1995. During this same general time period, two other Veverka children, Aaron and Mara, also ran away from appellant and began to reside elsewhere.
When she permanently left the Windsor residence, appellee was eighteen years old. Initially, appellee stayed at a shelter for abused women in Ashtabula County. While she was there, appellee told certain counselors that appellant and Keller had physically abused her as part of the sessions held in their bedroom. She further stated that the two women had also abused the other Veverka children. In relation to Seth, appellee said that appellant and Keller had forced Seth to stay in his bed or on the couch for sustained periods of time, did not allow him to go outside or exercise in any manner, and would only feed him certain foods.
Upon leaving the shelter for abused women, appellee was able to find employment and rent an apartment on her own. In addition, she was ultimately able to obtain a high school diploma.
Predicated in part upon the information supplied by appellee, the Ashtabula County Children Services Board filed a civil complaint against appellant in January 1996.[1] The complaint alleged in part that appellant had been negligent in her care of the remaining Veverka children, Evan and Seth, and had failed to protect them from physical abuse. Based upon the affidavit accompanying the complaint, the trial court issued a judgment ordering the temporary removal of Evan and Seth from appellant's custody on the basis that it would harm their general welfare to remain in the Windsor residence.
Seth's custody proceeding was initially assigned to Judge Charles G. Hague of the Ashtabula County Court of Common Pleas. However, before an adjudicatory hearing could be held on the complaint, appellant moved to dismiss the action on the ground that Judge Hague had conducted an improper ex parte interview of Mara Veverka prior to the hearing. After conducting an oral hearing on the motion, Judge Hague issued a judgment denying the motion on the basis that the interview had been conducted under the mistaken belief that Mara was a party to the action. Judge Hague emphasized that he would not consider anything he had heard from the interview in making his preliminary decision on the complaint.
Despite this, before the adjudicatory hearing could be held, the Supreme Court of Ohio assigned Judge Richard A. Hoose to hear the matter. Judge Hoose then conducted a three-day evidentiary hearing in early June 1996. However, before the close of the evidence, appellant and the board were able to negotiate an agreement as to the issues raised in the complaint. Specifically, the parties agreed that a finding of dependency would be entered as to both Seth and Evan, and that the board would take temporary custody of both children. The parties also agreed that a case plan would be established which appellant would have to satisfy in order to regain custody.
After signing the agreed judgment entry, Judge Hoose did not play any further role in the action. In November 1996, Judge Hague issued an entry approving the case plan filed pursuant to R.C. 2151.412. Furthermore, Judge Hague subsequently rendered a judgment extending the board's custody of the two children. Finally, in regard to Evan Veverka, Judge Hague issued a judgment entry which restored permanent custody of the child to appellant. When Judge Hague took each of the foregoing actions, appellant never raised any objections to his authority.
In June 1997, appellee moved to be added as a party to the custody proceeding. In conjunction with this motion, appellee also moved to be granted legal custody of Seth. As the basis for the latter motion, appellee simply argued that, because she was Seth's sister, it would be in his best interest if custody were awarded to her.
After appellant had moved to strike appellee's motions, Judge Hague rendered a judgment granting appellee's motion to be added as a party. A hearing on the motion for custody was then scheduled for November 1997. However, before this particular hearing could go forward, appellant's trial counsel filed a disqualification affidavit in the Supreme Court of Ohio. In response, Judge Hague filed a letter in which he stated that, although he was not admitting any bias on his part, he would voluntarily recuse himself from the case. Accordingly, the Supreme Court of Ohio assigned Judge Mary Cacioppo to hear appellee's motion for custody.
In February 1998, Judge Cacioppo conducted a two-day evidentiary hearing on the motion for custody. In addition to hearing live testimony from the three parties, Judge Cacioppo reviewed the transcripts of the prior evidentiary hearings which had been held before Judge Hague, Judge Hoose, and a court magistrate.
Approximately two months after the evidentiary hearing, Judge Cacioppo rendered a judgment granting appellee's motion for custody. In the first part of her judgment, Judge Cacioppo rejected appellant's argument that the court had lost jurisdiction over the case because more than two years had passed since the board had taken temporary custody of Seth. Judge Cacioppo expressly found that appellant had been the cause of the majority of delay in the action.
Turning to the merits of appellee's motion for custody, Judge Cacioppo first found that appellant had not shown that she was a suitable parent for Seth. In support of this finding, the judge noted that: (1) appellant had not accepted any responsibility for the problems caused by the "demon" hysteria in her family; (2) appellant had not taken any steps to protect Seth from the physical abuse inflicted upon him by Keller; and (3) she still intended to "home school" Seth, even though the evidence had showed that Seth's mental growth had been stunted by such a learning program.
In relation to appellee, Judge Cacioppo found that appellee had formed a bond with Seth by visiting him regularly while he was in the board's custody. The judge also found that appellee had made the necessary arrangements to provide a proper home for Seth. Accordingly, the judge ended the board's custody of Seth and granted temporary legal custody to appellee.
In appealing from the foregoing judgment, appellant has assigned the following as error:
 "1. The trial court erred and abused its discretion by considering appellee Celena Veverka's Motion To Intervene and Motion for Permanent Custody as they were not properly before the court in light of the fact that only an agency may request permanent custody of a child.
 "2. The decisions of Judge Hague, after his recusal, including the decision to permit appellee Celena Veverka to intervene and file her motion for permanent custody are void as a matter of law.
 "3. Because Seth Veverka was in the custody of the Ashtabula County Children's Services Board for more than 2 years and said agency failed to file a dispositional motion before the expiration of said 2 year period, the trial court erred and abused its discretion by not granting custody of Seth Veverka to appellant since the problems which lead to the original grant of temporary custody had been resolved and sufficiently mitigated.
 "4. The judgment rendered by the trial court was against the manifest weight and sufficiency of the evidence.
 "5. The trial court erred and abused its discretion by reviewing and considering the trial transcripts from the previous hearings which were conducted more than 1.5 years earlier where the witnesses were available and said evidence was only that presented by the Ashtabula County Children's Service Board. In the alternative, trial counsel was ineffective for its failure to object on the record to the trial court's consideration of the transcripts from previous hearings in the case.
 "6. The trial court abandoned its role of impartial trier of fact by its constant interruptions and sua sponte objection. In the alternative, appellant's trial counsel was ineffective for its failure to object to same.
 "7. Trial court erred and abused its discretion in failing to grant appellant any set visitation with Seth Veverka.
 "8. Trial court erred, to the prejudice of the appellant by failing to enter a dispositional order within the time frame indicated in R.C. 2151.35(B)(3) and in accordance with the due process rights of the appellant in accordance with the U.S. Constitution."
Under her first assignment, appellant essentially challenges the authority of the trial court to grant appellee "permanent" custody of Seth. Citing to R.C. 2151.011, appellant asserts that only a public children services board can be granted permanent custody of a child after an initial determination of dependency has been made.
In relation to this argument, this court would note that the appealed judgment before us only granted appellee temporary custody of Seth; thus, appellant's argument has no application to the facts of this case. Furthermore, our review of the relevant statute indicates that the trial court has the basic authority to grant temporary custody of a dependent child to a private individual.
R.C. 2151.417 governs the continuing jurisdiction of a juvenile court after that court has rendered a dispositional order under R.C. 2151.353. Division (A) of this provision states that a juvenile court has the authority to review a child's custody arrangement at any time during the period the dispositional order is pending. Division (F)(2)(c) further provides that if the child is in the temporary custody of the children services board, the court can alter the custody order by giving custody of the child to an "individual."
In the instant case, a review of the facts indicates that R.C.2151.417 was applicable to the trial court's actions. Specifically, the record shows that the court's order granting custody to appellee following an initial finding of dependency had been issued pursuant to R.C. 2151.353. Thus, not only did the trial court have the power to entertain a motion to grant custody to a private individual, but the court had the authority to grant the motion and allow appellee to take temporary custody of Seth.
Pursuant to the foregoing analysis, appellant's first assignment in this appeal is without merit.
Under her next assignment, appellant asserts that Judge Hague lacked the authority to rule upon certain motions which were filed after the initial dispositional order had been issued. Specifically, appellant contends that Judge Hague could not sit on this case once Judge Hoose had been appointed to conduct the dispositional hearing. Based upon this, she further asserts that Judge Hague's judgment granting appellee's motion to be added as a party should be declared void.
As a general proposition, this court would agree that a trial judge lacks the power to go forward in a case once an affidavit of disqualification has been filed in the Supreme Court of Ohio. SeeState v. Mays (1996), 108 Ohio App.3d 598, 612. Nevertheless, the record in the instant action indicates that an affidavit of disqualification was never filed against Judge Hague until after he had ruled upon the motion to add appellee as a party. That is, even though Judge Hague did not participate in the initial dispositional hearing, his lack of participation was not due to any affidavit of disqualification filed against him at that time. In fact, the record does not indicate why Judge Hoose had been appointed to conduct the first hearing.
Given these circumstances, this court concludes that Judge Hague had the authority to rule upon the various motions filed by the parties after the dispositional order had been issued. Thus, as Judge Hague's judgments were valid, appellant's second assignment is not well-taken.
Under her third assignment, appellant again challenges the authority of the trial court to render the appealed judgment in this action. In this instance, appellant maintains that the trial court could not award appellee custody of Seth because it did not issue its ruling in a timely manner. In support of this argument, appellant notes that: (1) the judgment at issue was rendered more than two years after Seth had been removed from the Windsor home; and (2) the Ashtabula County Children Services Board had not filed a motion for permanent custody of Seth.
R.C. 2151.353(F) states that, following the issuance of the initial dispositional order, a children services board can take temporary custody of a child for a period of one year, unless an extension of the custody is granted. In turn, R.C. 2151.415(D) provides that the board can be granted only two six-month extensions. Thus, the longest period the board can have temporary custody is two years.
Furthermore, R.C. 2151.415(A) states that, within thirty days prior to the termination of temporary custody, the board must file a motion requesting that a final dispositional order be issued by the juvenile court.
In interpreting the foregoing statutes, the Supreme Court of Ohio has concluded that the passing of the two-year limitation on temporary custody does not deprive a juvenile court of authority to render dispositive orders in regard to a child. However, the court has further held that a juvenile court can exercise this continuing jurisdiction only if the exact problems which caused the removal of the child from the home have not been resolved or substantially mitigated. See In re Young Children (1996),76 Ohio St.3d 632, 637-638.
In the instant action, the record before this court readily shows that the appealed judgment was not rendered prior to the termination of the two-year period. Despite this, we still conclude that the trial court had jurisdiction to grant custody to appellee because the evidence before the trial court supported the finding that the problems at the Windsor home had not been resolved. Specifically, as will be discussed fully under the next assignment, the evidence indicated that appellant had not taken any steps to ensure that Seth would not be subject to further abuse. Accordingly, as the trial court did not exceed its authority in making a dispositional order concerning Seth, the third assignment in this appeal is without merit.
Under her fourth assignment, appellant contends that the trial court's decision to grant custody to appellee was against the manifest weight of the evidence. In essence, she submits that custody of Seth should have been returned to her because the evidence showed that she had fulfilled the majority of the requirements set forth in the case plan concerning Seth.
In regard to this argument, this court would begin its analysis by noting that much of the testimony given during the dispositional hearing before Judge Cacioppo supports appellant's assertion. For example, two of the case workers assigned to this case stated that appellant had satisfied many of the objectives of the case plan, such as attending counseling on the matter. Moreover, one of the caseworkers testified that she could not see any reason why appellant and Seth should not be reunited. This was also the crux of the testimony of a psychologist and an art therapist.
However, our review of Judge Cacioppo's decision indicates that it was predicated upon the finding that appellant had never acknowledged the role she had played in the demon "hysteria" which had resulted in the abuse of Seth. The decision was also based upon the finding that she had never acknowledged that the home-schooling program she had followed in relation to Seth had stunted his mental growth.
The record before this court supports Judge Cacioppo's findings on these specific points. One of the caseworkers expressly testified that appellant had never admitted that she and Keller had been the primary cause of the demon hysteria at the Windsor home from 1993 until 1996. Furthermore, the trial transcripts show that considerable evidence was presented establishing that this hysteria had resulted in abusive behavior toward Seth. For example, appellee testified that appellant and Keller had attempted to remove the demon from Seth by making him remain seated for long periods of time and not allowing him to go outside or do any exercises.
Similar testimony was also given on the home-schooling issue. Not only did the evidence indicate that Seth's ability to communicate and react to people was stunted at the time he was taken into temporary custody, but it also demonstrated that appellant had not acknowledged that this problem had occurred as a result of the fact that she had kept Seth isolated from other children.
R.C. 2151.415(A) provides that any decision concerning the temporary custody of a dependent child must be based upon the best interests of the child. Based upon the foregoing analysis, this court concludes that the record before us contained considerable evidence upon which the trial court could find that it would not be in the best interest of Seth to return him to appellant. That is, the trial court could have readily found that, despite the fact that appellant had satisfied many of the objectives of the case plan, she still failed to resolve the primary problems which had caused the removal of the child originally. Therefore, as Judge Cacioppo's decision was supported by the evidence in this action, appellant's fourth assignment lacks merit.
Under her fifth assignment, appellant argues that Judge Cacioppo erred in basing her decision in part upon the transcripts of the prior hearings held before Judge Hague, Judge Hoose, and a court magistrate. Appellant maintains that the testimony presented during those hearings should not have been considered because the witnesses who gave testimony previously were available to testify again.
In regard to this issue, this court would first emphasize that the record before us supports the conclusion that the prior transcripts were used to avoid the inconvenience of having to present the same testimony again. When a juvenile judge must determine if a change in the temporary custody of a dependent child should be granted in a specific case, the judge must be able to decide whether a change of circumstances has occurred. In making such a decision, the judge must be aware of the original circumstances which had warranted the removal of the child.
In the instant case, Judge Cacioppo had not conducted any of the prior hearings in the action. Thus, in order for her to make a proper determination, she would have had to hear evidence on both the original circumstances and the "new" circumstances in the case. Given that more than three days of testimony had been presented in this matter, a completely new hearing would have taken a considerable amount of time.
More importantly, this court would note that the use of the prior transcripts did not violate the rules of evidence. InDiversified Mtge. Investors, Inc. v. Athens Cty. Bd. of Revision
(1982), 7 Ohio App.3d 157, it was held that a trial court can take judicial notice of prior proceedings in the same case between the same parties.
Finally, we would indicate that, as part her judgment on appellee's motion, Judge Cacioppo stated that the parties had expressly agreed that the prior transcripts should be considered in ruling upon the motions. Given that Judge Cacioppo could have taken judicial notice without the parties' agreement, the record does not support appellant's assertion that she was prejudiced by the actions of her trial counsel in relation to this point. Accordingly, as Judge Cacioppo's use of the prior transcripts was appropriate under the facts of this case, the fifth assignment in this appeal is not well-taken.
During the course of the hearing on appellee's motion, Judge Cacioppo asked the various witnesses a substantial number of questions on a variety of topics. Under her sixth assignment of error, appellant contends that her right to a fair trial was prejudiced by these actions. Specifically, she submits that Judge Cacioppo exceeded her role as the impartial trier of fact.
Although the primary role of a trial judge is to act as an umpire in a trial, the courts of this state have held that a judge can ask questions of a witness if the questions are intended to develop the facts of the case and to elicit the truth in the interest of justice. It has further been held that in the absence of a showing of actual bias or prejudice, it will be presumed that the trial judge acted impartially in attempting to develop the truth. See Jenkins v. Clark (1982), 7 Ohio App.3d 93, 97-98.
Upon reviewing the trial transcript in the instant case, this court concludes that the foregoing presumption is applicable here. Although the number of questions asked by Judge Cacioppo were numerous, the nature of those questions did not reveal any bias or impartiality on her part. Instead, the nature of her inquiries plainly shows that she was simply attempting to determine the facts in the matter.
As part of this assignment, appellant also maintains that she was denied the effective assistance of counsel because her trial attorney never objected to the judge's questions. Given our conclusion that Judge Cacioppo never exceeded her role as an impartial trier of fact, we further conclude that the actions of her trial counsel were appropriate. As a result, appellant's sixth assignment lacks merit.
As part of the appealed judgment in this case, the trial court ordered that appellant should be allowed to visit Seth while he is in appellee's temporary custody. However, in making this general order, the trial court did not specifically state what visitation rights appellant would have. Instead, the court stated that the visitation schedule should be set by the children services board as part of the new case plan on the matter. Under her seventh assignment, appellant asserts that the trial court erred in failing to set the visitation schedule in its judgment.
In support of this argument, appellant cites R.C. 3109.051(A) for the proposition that a trial court is always required to set forth a person's visitation rights in the final judgment in an action. However, this statute expressly applies to custody judgments in divorce actions. Appellant has failed to cite to any provision in R.C. Chapter 2151 which imposes the same requirements upon a juvenile court in a dependency action.
In addition to the visitation order, the trial court also ordered the children services board to maintain protective supervision over Seth for a period of six months. Thus, it is evident that the court intended for the board to continue to exercise some control over Seth, consistent with the provisions of R.C. 2151.417. Under such circumstances, it logically follows that the board should initially set the schedule for the visitation, as it will be the entity which will be regulating the visitation under the trial court's order.
Finally, we would emphasize that, as was the case when the board had temporary custody of Seth, appellant can always file objections with the trial court concerning any visitation schedule promulgated by the board.
As the trial court was not required to set forth a specific visitation schedule as part of its final judgment, appellant's seventh assignment is not well-taken.
Under her final assignment in this appeal, appellant again contests the jurisdiction of the trial court to render the judgment granting custody to appellee. Appellant argues that the judgment should be declared void because the trial court failed to render its judgment within seven days after the completion of the dispositional hearing. As a part of this argument, appellant further asserts that the court's failure to issue the judgment in a "timely" manner violated her rights to due process.
R.C. 2151.35(B)(3) provides that a dispositional order in a dependency case must be rendered within seven days following the conclusion of the hearing on the matter. In interpreting this statute, the Supreme Court of Ohio has concluded that, although the time requirement is mandatory, the failure of a juvenile court to comply with the requirement does not affect the court's jurisdiction. In re Davis (1999), 84 Ohio St.3d 520. The Davis
court also held that a parent is estopped from raising this issue on appeal when they failed to bring an action in procedendo to require the trial court to render its judgment.
Prior to Davis, we held that the lack of compliance can be the basis of a reversal of a custody judgment when the parent's due process rights had been violated. In re Omosun Children (1995),106 Ohio App.3d 813, 817. In that case, the delay between the conclusion of the dispositional hearing and the issuance of the judgment was twenty-eight months. In concluding that the trial record demonstrated a due process violation, this court noted that the wording of the judgment was such that it was apparent that the trial judge had had no independent recollection of the evidence when he composed the judgment.
In the instant case, the record shows that the delay between the end of the hearing and the issuance of the judgment was only fifty days. Furthermore, the wording of the dispositional judgment readily indicates that the court's determination was based upon its recollection of the evidence presented. Under these circumstances, this court holds that the trial court's lack of compliance did not result in a violation of appellant's due process rights.
Moreover, since appellant did not bring an action in procedendo, this issue is not properly before us in the context of this appeal. As a result, appellant's final assignment is without merit.
Pursuant to the foregoing analysis, the judgment of the trial court is affirmed.
 __________________________________________ PRESIDING JUDGE JUDITH A. CHRISTLEY
NADER, J., MAHONEY, J., (JOSEPH), Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] As an aside, this court would note that the Ashtabula County Children Services Board is also an appellee in this appeal. However, for the sake of clarity, that entity will be referred to as the "board" throughout this opinion.