JOURNAL ENTRY AND OPINION
This is an appeal from an order of Visiting Juvenile Court Judge Joseph J. Nahra that found L.W., the mother of sixteen year-old F.M., in contempt of court for violating a no contact order entered pending disposition of a permanent custody complaint. We affirm.
Because of L.W.'s inappropriate behavior with F.M. and her unresolved mental illness, the boy had been removed from their home in 1993 by the Cuyahoga County Department of Children and Family Services (CCDCFS) and his maternal grandmother was granted legal custody. On June 20, 2000, CCDCFS filed a complaint for permanent custody, alleging that F.M.'s placement with his grandmother was no longer appropriate because she had allowed L.W. to move into the home with them. Seven days later Magistrate Dana C. Chavers held a hearing, and subsequently issued an order continuing an earlier one that granted CCDCFS emergency custody of the boy and enjoined L.W. from any contact with her son.
On July 26, 2000, the judge held a preliminary hearing on the permanent custody complaint during which the parties also discussed the no contact order. Despite L.W.'s complaints that the no contact order violated visitation rights granted to her in the previous legal custody proceedings, the judge ruled that it should continue, and issued a journal entry to that effect on August 3, 2000. On September 20, 2000, CCDCFS filed a motion to show cause against L.W. alleging that she had violated the no contact order and was in contempt of court. On October 3, 2000, the judge adjudicated F.M. a neglected child, continued the no contact order, and scheduled a dispositional hearing after which he granted F.M.'s permanent custody to CCDCFS.
On October 30, 2000, the judge held a hearing and found L.W. in contempt of court for violating the no contact order and sentenced her to thirty days in jail, suspended, on the condition that she comply with the no contact order concerning her son.[1] The ruling was not journalized, however, until June 29, 2001.
L.W. asserts six assignments of error, the first of which states:
 I. APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN SHE WAS ORDERED TO HAVE NO CONTACT WITH HER CHILD.
The mother initially contends that the no contact order was invalid and unenforceable because CCDCFS had a duty to encourage reunification and, therefore, to encourage her visitation. She points to R.C. 2153.353(C), which allows a judge to impose a no contact order after a child has been adjudicated neglected or dependent, and claims that this section necessarily implies that such an order cannot be imposed prior to such adjudication. We disagree. R.C. 2153.353(C) does not limit the judge's power to impose appropriate temporary orders pending adjudication, and she concedes that R.C. 2151.33(B)(1) allows the judge to issue temporary orders preventing visitation. The same authority is stated in Juv.R. 13(B)(2). Although L.W. claims that these provisions do not authorize an order prohibiting all contact between parent and child, their plain language cannot be interpreted any other way. Under Juv.R. 13(B)(2)(c) and (g), a judge has authority to limit or eliminate visitation, and to impose any other order that restrains * * * the conduct of any party in order to protect the child's best interests.
She next argues that her fundamental liberty interest * * * in the care, custody, and management of [her] child[2] prevents a no contact order from being imposed prior to the adjudication. In fact, she appears to suggest that such an order could be imposed only upon findings sufficient to support the termination of parental rights altogether, as stated in R.C. 2151.414. Again, we disagree. A temporary order imposed pursuant to R.C. 2151.33(B) or Juv.R. 13 need not be supported by the same detailed findings necessary to support permanent termination of parental rights. If temporary orders could be imposed only upon the same standards necessary to impose a permanent order, the statutes and rules authorizing them would fail of their purpose. Temporary orders are imposed in order to protect the child's best interests pending the outcome of the proceedings, and we will not prevent enforcement of such orders absent an abuse of discretion.[3]
Enforcement of a temporary[4] no contact order entered on proper procedure and evidence showing that it serves the child's best interests does not violate constitutional due process guarantees. The record shows that L.W. had opportunities to contest the order, that the judge imposed it because she had circumvented custody and visitation restrictions, and there was evidence that her interaction with her son threatened his welfare and development. A no contact order is constitutional and justified in appropriate circumstances, and the judge did not abuse his discretion in finding those circumstances here. The first assignment is overruled.
The second assignment states:
 II. APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO COMPLETE RECORDING OF THE HEARING BEFORE THE MAGISTRATE ON JUNE 27, 2000.
The transcript of the June 27, 2000 hearing before the magistrate, which resulted in the no contact order, was made from an audio recording that has numerous gaps corresponding to inaudible responses, and the audiotape ended before all witnesses had testified. L.W. claims, therefore, that she is entitled to a record of the hearing and that the transcript provided is incomplete and inadequate for review.
Juv.R. 37(A) and 40(D) require all proceedings before magistrates to be recorded and the failure to record this hearing is error.[5] In this case, however, the judge continued the no contact order after a hearing on July 26, 2000, during which L.W. objected to the order and F.M.'s guardian ad litem reported her inappropriate behavior and requested its continuation. This hearing transcript and the judge's subsequent order continuing the no contact restriction are adequate to show that it was imposed upon proper procedures and evidence that the restriction was in F.M.'s best interest. Because the no contact order was continued in a subsequent proceeding, the lack of a complete transcript of the June 27, 2000 hearing does not render it invalid. The second assignment of error is overruled.
The third assignment states:
 III. APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN HER [sic] PRETRIAL ORDER OF THE MAGISTRATE FAILED TO ISSUE ANY FINDINGS OF FACT CONCERNING THE EMERGENCY CUSTODY.
The magistrate's order was a temporary order pursuant to Juv.R. 40(C)(3), and Juv.R. 40(E) states that a magistrate is not required to prepare any report other than the magistrate's decision. Moreover, our determination that the judge effectively continued the no contact order after the July 26, 2000 hearing renders moot any claimed defect in the magistrate's order.[6] Under Juv.R. 40(E) and Civ.R. 52, neither the magistrate's temporary order nor the judge's continuation of it required written findings of fact, even if L.W. had requested them.
Similarly, we are not convinced that the lack of a decision with findings of fact deprived her of due process. The record contains enough facts to conclude that the judge did not abuse his discretion because, as already noted, the transcript of the July 26, 2000 hearing provides an adequate basis for the order. The third assignment of error is overruled.
The fourth and fifth assignments state:
 IV. APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO NOTICE CONCERNING THE ALLEGED NO-CONTACT ORDER.
 V. APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO RECORD OF APPELLANT RECEIVING ACTUAL NOTICE OF THE ALLEGED NO-CONTACT ORDER.
L.W. asserts that, because she was not notified at the June 27, 2000 hearing that a no contact order would be considered, her due process rights were violated. She also claims the order cannot be enforced because there is no record showing its service, and no indication that she had actual notice of the order or its specific provisions.
As noted supra, R.C. 2151.33 and Juv.R. 13 allow judges and magistrates to make necessary pretrial orders, including the order here. The magistrate is authorized to act sua sponte or upon oral motion to protect the child's best interests.[7] Although the record does not show the mother was given advance notice that a motion for a no contact order would be considered, it does show she was represented by a lawyer at the June 27, 2000 hearing, and the available transcript indicates the order was not new, but was a continuation of an order already imposed in a separate proceeding. Moreover, any defect was cured when the judge addressed the order in the subsequent hearing and thus did not cause her prejudice.[8]
Although there are specific rules of procedure governing original service of process[9] and service of appealable orders,[10] neither the Civil Rules nor the Juvenile Rules contains any requirement concerning service of interim orders.[11] Such orders continue to be governed by the due process requirement that reasonable or meaningful notice be given,[12] and in this case the record shows the mother's actual notice of the no contact order, her presence at proceedings addressing it, and her failure to complain of a lack of service or adequate notice in the juvenile court proceedings. The actual notice shown in this case satisfies due process.
The transcript of the July 26, 2000, hearing shows that L.W. was aware of the no contact order, and the content of her objections shows that she knew its terms. Although she claims she was not apprised of the order's scope or its specific provisions, the transcript betrays her knowledge of the order's simple mandate — that she have no contact with her son. Because the record shows her actual notice, the lack of recorded service did not prevent enforcement of the no contact order. The fourth and fifth assignments are overruled.
The sixth assignment states:
 VI. APPELLANT WAS DENIED DUE PROCESS OF LAW BY REASON OF THE EIGHT (8) MONTH DELAY IN ENTERING JUDGMENT.
The judge's contempt ruling was not journalized until June 29, 2001, even though the judge announced his ruling on October 30, 2000. On that basis L.W. claims it is invalid and points to Crim.R. 32(A), which requires that criminal sentences be imposed without unnecessary delay[,] as well as Sup.R. 7, which requires that both civil and criminal judgments be entered within thirty days of their announcement, and claims that failure to comply with either or both provisions violates her constitutional due process rights.
We first note that the thirty-day requirement of Sup.R. 7 is not the type of provision that a party can use to defeat a judgment. Like other provisions of this kind, Sup.R. 7 is directory, not mandatory, and L.W. cannot rely on the rule's literal terms to invalidate the judgment.[13]
CCDCFS claims that the contempt sanction is civil because the jail sentence is conditional and therefore remedial or coercive instead of solely punitive,[14] and argues that any reference to Crim.R. 32 is inapplicable because L.W. can avoid the suspended jail sentence by complying with the no contact order. We find it unnecessary to determine whether the contempt is criminal or civil because, even if Crim.R. 32 is not literally applicable, in either case she was entitled to a reasonably prompt imposition of sentence. Whether the contempt was criminal or civil, she was entitled to avoid a lengthy delay in sentencing that would needlessly deprive her of the opportunity to execute the sentence and free herself of the obligations it imposed.
Nevertheless, while we recognize that unnecessary delay in criminal sentencing can divest a court of jurisdiction,[15] we do not find that doctrine applicable here. L.W. was not prejudiced because she continued to be subject to the no contact order regardless of the contempt finding. The failure to journalize the suspended sentence did not prevent her from satisfying her obligations, but meant only that she was not subject to the conditions of the suspension until judgment was entered.
It is not clear how long the suspended sentence remains capable of re-imposition, but she has not shown prejudice based on any delay in her ability to discharge it. Without such a showing we cannot find her rights were prejudiced by the delayed entry of judgment. The sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCURS IN JUDGMENT ONLY JAMES D. SWEENEY, P.J., CONCURS IN JUDGMENT ONLY (See Attached Separate Opinion)
[1] The suspended sentence also was conditioned on her compliance with a restraining order concerning a CCDCFS social worker.
[2] Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599.
[3] In Re James C. (Aug. 20, 1999), Lucas App. No. L-98-1258.
[4] Although it appears the order has been continued beyond the completion of the permanent custody disposition, its continuance at that point no longer implicates the constitutional rights of a parent. Therefore, our focus is on the validity of the temporary order imposed prior to the order terminating parental rights.
[5] In Re L.D. (Dec. 13, 2001), Cuyahoga App. No. 78750.
[6] Similarly, CCDCFS's claim that the mother waived error by failing to appeal the magistrate's order pursuant to Juv.R. 40(C)(3)(b) is moot, because the judge addressed the order and continued it.
[7] R.C. 2151.33(C)(1).
[8] In re Hitchcock (June 22, 2000), Cuyahoga App. No. 76432.
[9] Juv.R. 16.
[10] Civ.R. 58(B); In re Anderson, 92 Ohio St.3d 63, 67,2001-Ohio-131, 748 N.E.2d 67.
[11] See, e.g., Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn. (1986), 28 Ohio St.3d 118, 123-124, 28 OBR 216, 502 N.E.2d 599
(Civ.R. 5(A) does not apply generally to court's entries). There is no reason to expect that Juv.R. 20 is subject to a different interpretation.
[12] Id. at 124; Moldovan v. Cuyahoga Cty. Welfare Dept. (1986),25 Ohio St.3d 293, 295, 25 OBR 343, 496 N.E.2d 466. Despite Moldovan's reference to Fed.R.Civ.P. 77(d), which includes service of orders, the subsequent amendment to Civ.R. 58 includes only final judgments.
[13] In re Davis, 84 Ohio St.3d 520, 522-523, 1999-Ohio-419,705 N.E.2d 1219.
[14] Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253-254, 18 O.O.3d 446, 416 N.E.2d 610.
[15] Willoughby v. Lukehart (1987), 39 Ohio App.3d 74, 75-76,529 N.E.2d 206.