OPINION
{¶ 1} Appellant, Joseph Sigler, appeals from a judgment by the Allen County Common Pleas Court, Juvenile Division, terminating his parental rights and granting permanent care and custody of his minor children to Appellee, Allen County Children's Services Board ("ACCSB"). Despite the reasonable efforts to reunify the children with appellant and the prolonged length of time afforded to correct the ACCSB's on-going concerns, clear and convincing evidence supports that he continues to be unable to provide a secure, stable residence for his children and that the grant of permanent custody is warranted.
 {¶ 2} Facts and procedural posture pertinent to the issues raised on appeal are as follows. On April 18, 2000, a shelter care hearing was conducted in reference to Troy Cook, age six, and Cynthia and Mariah Sigler, ages four and two, respectively, resulting in the children being placed in the shelter care of the ACCSB. The immediate basis of removal related to the sexual victimization of Troy by an eight year-old neighbor left to care for him. A complaint for dependency was also filed by the ACCSB at that time. Prior to the April 2000 removal, the children had placed in the custody of the ACCSB on a temporary basis and then been subsequently reunited with their parents. The ACCSB has been involved with the children's parents, appellant and Patricia Sigler, since 1998.
 {¶ 3} Pursuant to a July 5, 2000 consent entry, the children were adjudicated dependent and placed in the temporary care of the ACCSB. The case plan listed as primary concerns the parents leaving the children with inappropriate caregivers, the children's basic needs, and the stability of a home environment.
 {¶ 4} Thereafter, in February 2001, because improvements by Patricia were recognized by the ACCSB, the agency moved to modify the existing custody disposition and return custody of the children to her, subject to protective supervision. At the time, Appellant also resided in the home. And, therefrom, a reunification was attempted in April 2001; however, as the children were being placed in the home, their foster mother and the caseworker noticed that the electricity in the home had been turned off because appellant and Patricia failed to pay the bill. Additionally, the parents had neglected to inform the ACCSB of their financial troubles, thus inhibiting timely assistance for payment. Accordingly, in a traumatic episode for the children, the reunification did not take place and temporary custody in the ACCSB was extended. The caseworker was subsequently granted the funds from the agency to pay the electric bill; however, by that time, appellant and Patricia had not only been evicted from the residence but they also had incurred a gas bill exceeding one thousand dollars and the water service had also been discontinued for their failure to pay. Once evicted, appellant and Patricia moved into separate homes with family members.
 {¶ 5} On September 5, 2001, the trial court granted Appellant and Patricia's motion to substitute their caseworker. On September 26, 2001, the ACCSB filed a motion for permanent custody since the children had been in temporary custody in excess of twelve of the previous twenty-two months. The first of three permanent custody hearings was on November 14, 2001, and the last was on March 20, 2002. At the time of the first hearing, Appellant had purchased a residence; however, it was not made suitable for children until the final hearing. Additionally, at the time of the final hearing, appellant was already two months behind in house payments.
 {¶ 6} After hearing the evidence, the trial court entered a May 8, 2002 judgment granting permanent custody of the children to the ACCSB. The crux of the decision focused on the parents' inability to secure and maintain a suitable living environment for the children. From this decision, appellant appeals, asserting two assignments of error for our review. Patricia is not a party to this appeal.
Assignment of Error I
 {¶ 7} "The trial court erred in granting permanent custody to Allen County Children Services Board as the determination of the court was not supported by clear and convincing evidence and therefore is arbitrary and constitutes an abuse of discretion."
 ¶ 8The Ohio Revised Code provides that a clear and convincing evidence standard must be utilized when determining permanent termination of parental rights.[1] Clear and convincing evidence is "that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."[2]
 {¶ 9} R.C. 2151.414(B)(1) provides that when deciding whether to permanently divest parents of their custody rights, a trial court must apply a two-pronged test. The court must determine whether such action, by clear and convincing evidence, will serve the best interests of the children, and whether one of the factors in R.C. 2151.414(B)(1)(a) through (d) applies.[3] The relevant factor in this case asks whether the children have "been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."[4] The children herein had been in the temporary custody of the ACCSB for over seventeen months to the date of the permanent custody motion, a fact not in dispute. Accordingly, our discussion is limited to appellant's claim that the trial court's finding of best interest was not established by clear and convincing evidence.
 {¶ 10} R.C. 2151.414(D)(1) through (5) sets forth the relevant factors that a court must consider in determining the best interests of the child. These factors include, but are not limited to, the following:
 {¶ 11} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 12} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 13} "(3) The custodial history of the child * * * ;
 {¶ 14} "(4) The child's need for a legally secure permanent placement and whether * * * [it] can be achieved without a grant of permanent custody to the agency;
 {¶ 15} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."[5]
 {¶ 16} After considering the factors contained in R.C. 2151.414(D), the trial court found clear and convincing evidence that the best interests of the children would be served by awarding permanent custody to the ACCSB. For the following reasons, we determine that the evidence supports this finding.
 {¶ 17} In light of R.C. 2151.414(D)(1), the evidence clearly establishes that Appellant loves his children, appropriately interacts with them, and has not missed the afforded weekly opportunities to visit them. However, whether parents and their children love one another "has little bearing on what is in the children's best interest * * * nor is such consideration paramount in the statutory scheme."[6] The prolonged length of time that the children have remained in foster care has caused the weekly visits to disrupt the stability they have grown accustomed to with their foster family. Testimony indicates that Cynthia becomes aggressive after visitation, while Troy becomes sad and introverted. Moreover, after extended visits with their parents, Troy seems to take on a parental role for his younger sisters. Apparently, once returned to their normal routine, they seem relieved to be back with their foster family. To address these emotional issues, their foster parents have enrolled both Troy and Cynthia in weekly counseling.
 _¶ 18_ Aside from the disruptions following visitations, the children are well adjusted to their foster family. Troy is attending kindergarten and has received no negative response from his teachers. Additionally, the foster parents were involved in creating Cynthia's individual education plan at her preschool in order to improve her rate of development, which had been delayed by a prior lack of parental involvement and consistency. Further, Mariah's verbal vocabulary is increasing weekly in foster care.
 _¶ 19_ According to R.C. 2151.414(D)(3), the children and their parents have been involved with the ACCSB since 1998. Throughout this time, the children have been placed in the temporary custody of the ACCSB on two occasions. At the time the permanent custody motion was filed herein, the children had been in the temporary custody of the ACCSB for over a seventeen-month period and remain there today.
 {¶ 20} The facts of this case relating to R.C. 2151.414(D)(4), however, present the greatest barrier for appellant to regain custody of his children. From the outset of this case, a permanent stable residence for the children has been a major concern. In the past, appellant was frequently late paying the family's utility bills, resulting in the water, gas, and electricity being turned off. Such problems resulted in the failed reunification attempt, which was extremely traumatic for the children. These problems were exacerbated by Appellant's failure to inform the ACCSB of, and often lying about, the family's financial difficulties.
 {¶ 21} Since 1998, appellant has moved six times, four of which were in 2000. When the motion for permanent custody was filed, appellant was residing with family and had no suitable residence for his children. At the time of the first permanent custody hearing, in November 2001, appellant had purchased a home; however, it had not been inspected by the ACCSB because Appellant missed the appointment. At the continued permanent custody hearing, in February 2002, the caseworker testified that while he had inspected the home, the residence was in disrepair and not appropriate for children. At the final permanent custody hearing, in March 2002, testimony indicates that Appellant's home would be suitable for children; however, he was already two months behind in house payments, indicating a continued lack of stability. Notably, appellant has had since July 2000 to obtain a suitable residence for his children.
 {¶ 22} As demonstrated by the evidence, various reasons clearly justify the trial court's conclusion that the children would be better cared for in another home, including appellant's continued inability to maintain a secure residence for the children, despite their prolonged custody with the ACCSB. Consequently, because the trial court's grant of permanent custody is supported by clear and convincing evidence, we find appellant's first assignment of error to be without merit, and it is hereby overruled.
Assignment of Error II
 {¶ 23} "Allen County Children Services Board failed its duty to use reasonable case planning and diligent efforts at reunification with the parent."
 {¶ 24} Within his second assignment of error, Appellant refers to no specific failure on the part of the ACCSB, but, instead, broadly claims that "the Agency fell far short of any active case management, referrals or any meaningful consistent services."
 {¶ 25} While R.C. 2151.419(A)(1) states that "the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child" must have "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home," a finding relating thereto by the trial court is not required when deciding whether permanent custody is proper pursuant to R.C. 2151.414.[7] However, in spite of the fact that it is not incumbent upon the trial court to make such a finding, the ACCSB still "bears the ultimate duty to use diligent efforts to achieve the goal of family reunification."[8]
 {¶ 26} The evidence in this case reveals that prior to the motion for permanent custody, appellant's case plan had been amended four times, each noting reunification as the primary goal. The record also establishes that counseling referrals were made to both parents, including referrals to treat Appellant's alcohol problem. The assigned caseworker and family aide also frequented appellant and Patricia's home to assist them in acquiring necessary parenting skills, and past referrals had been made to parenting classes. Notably, in April 2001, as previously mentioned, the ACCSB attempted to reunify the children with their parents but was prevented from doing so. Thereafter, the problems with maintaining a secure residence, continued to be the primary barrier for reunification. Because appellant failed to discuss his problems and misinformed the agency about his financial well-being, the ACCSB was unable to provide timely assistance in relation thereto.
 {¶ 27} While appellant does not specify the alleged failures of the ACCSB within this assignment of error, we glean from his statement of facts a reference to three potential instances. Appellant first claims that the family's original caseworker told the family not to move into assisted housing because multiple moves would undermine their residential stability. However, contrary testimony by the caseworker indicates that, while she did inform appellant that multiple moves do not demonstrate stability, she helped them in obtaining assisted housing and never instructed appellant not to accept assisted housing for his family. Ultimately, the decision of whether to move was left to appellant's discretion. And, because the credibility of the witnesses is a matter reserved to the trial court, it was free to accept the caseworker's version of events over the testimony of Appellant.[9]
 {¶ 28} The remaining instances cited by appellant in his statement of facts have no bearing upon our decision. One instance relates solely to Patricia, which is immaterial to this appeal, and the other pertains to appellant's alcohol abuse. However, notwithstanding the issues surrounding whether Appellant abuses alcohol, based upon our foregoing analysis in appellant's first assignment of error, clear and convincing evidence otherwise supports the permanent custody determination. Accordingly, appellant has failed to establish that he has been prejudiced by any alleged action or inaction by the ACCSB in their attempts at reunification.
 {¶ 29} In light of all the evidence presented, we find that the ACCSB provided reasonable efforts to unify appellant with his children. As such, appellant's second assignment of error is overruled.
 {¶ 30} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, the decision of the trial court is hereby affirmed.
Judgment affirmed.
 SHAW, P.J. and HADLEY, J., concur.
[1] R.C. 2151.414.
[2] Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; In re Hickok (Sept. 1, 2000), Marion App. Nos. 9-2000-27, 9-2000-28, 9-2000-29.
[3] R.C. 2151.414(B)(1).
[4] R.C. 2151.414(B)(1)(d).
[5] R.C. 2151.414(D).
[6] In the Matter of: Justin L. Davis, et al. (Nov. 26, 1997), Paulding App. No. 11-97-6, judgment affirmed by 84 Ohio St.3d 520, quoting In reDix (June 9, 1992), Defiance App. No. 4-91-22.
[7] In re Evans (Oct. 30, 2001), Allen App. No. 1-01-75, 2001-Ohio-2302.
[8] Id.
[9] Maag v. Maag (Mar. 28, 2002), Wyandot App. No. 16-01-16, citingState v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.