EVANGELINOS et al., Appellees,

v.

OHIO DIVISION OF RECLAMATION et al., Appellants.

[Cite as *Evangelinos v. Ohio Div. of Reclamation* (1997), 117 Ohio App.3d 720.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 95–BA–27.

Decided Jan. 27, 1997.

*John Preston Bailey,* for appellees.

*Betty D. Montgomery,* Attorney General, and *Mark G. Bonaventura,* Assistant Attorney General, for appellant.

*Geoffrey B. Mosser,* for intervenor–appellant.

---

GENE DONOFRIO, Judge.

Appellant, Ohio Division of Reclamation, and intervenor-appellant, R & F Coal Company ("intervenor"), appeal on grounds of *res judicata* an April 20, 1995 decision of the Reclamation Board of Review, wherein the board reversed the decision of appellant and denied intervenor's application for renewal of a permit to mine coal within three hundred feet of appellees Constantine and Toula Evangelinos's dwelling, based upon a determination that a recorded waiver attached to appellees' deed was invalid.

The record reveals that prior to April 21, 1961, the property was owned by Ruth A. Trimmer. Trimmer conveyed the property to Seaway Coal on April 21, 1961. On February 23, 1965 Seaway severed surface and mineral rights to this property in a conveyance of surface rights to Walton and Winnie Skaggs, while retaining mineral rights through a reservation in the deed. This reservation provided, in part:

"EXCEPTING from the hereinbefore described premises all, each, and every vein, seam, or strata of coal in, or underlying said premises; TOGETHER with the right, easement, privilege and permission to mine, remove, * * * or to utilize any or all of the coal hereby excepted, * * * by the open-pit, stripping, underground or any other method or practice * * * the right to enter into, upon, under, over and across said lands and premises hereinbefore described, at any and all times, * * * for the mining, removal * * * or utilization of any other coal now owned, leased or hereafter acquired by GRANTOR, * * * the right to construct, maintain, replace and remove any structures, roads, tramroads, power lines, dams, drains, machinery, equipment, appliances, or other facilities in or upon said lands and premises necessary, usual or required for treating, preparing, processing, or utilization of the coal hereby excepted * * * all without liability to the GRANTEES, their heirs and assigns, for damages resulting directly or remotely therefrom or compensation therefor, including any damages to crops, buildings, or structures now or hereafter placed thereon, * * * whether caused by the mining and removal of the coal hereby excepted, or other coal now owned or hereafter acquired by GRANTOR, its successors or assigns * * *.

"By the acceptance of this deed, GRANTEES, for themselves, their successors and assigns, hereby expressly waive and release the GRANTOR, its successors and assigns, from any and all liability, claims, demands, damages, actions or causes of action, present or future, in any manner arising or directly or remotely resulting from the stripping, mining, removal, draining, ventilating, transporting, treating, preparing, processing or utilization of any or all of the coal hereby excepted, or other coal now owned or hereafter acquired by GRANTOR, its successors or assigns, or the use or possession of said lands and premises, or the exercise or enjoyment by the GRANTOR, its successors and assigns, of any or all of the rights, privileges, easements and permissions herein excepted."

On March 8, 1977, Skaggs transferred the surface rights to Thomas J. Gibson. A specific exception regarding Seaway's mineral rights reservation was contained in this deed. Gibson subsequently transferred these surface rights to appellees on November 23, 1984. The mineral rights reservation was specifically noted in the deed as follows:

"EXCEPTING the coal and mining rights waiver of liability as set forth in the deed recorded at Vol. 567, page 486, Belmont County Deed Records, and being the reservations for the benefit of Seaway Coal Company, its successors and assigns."

The record also provides that Seaway transferred all rights and ownership in the mineral rights associated with the property to Shell Mining Company on August 30, 1985. Shell Mining Company executed a coal lease and assignment with R & F Coal Company, intervenor herein, on December 10, 1986. This lease

included mining rights for minerals associated with the property. Intervenor is a wholly owned subsidiary of Shell Mining Company.

On June 18, 1987, appellant issued a fixed-term permit, effective until June 17, 1992, for intervenor to mine coal on the property. This court overruled appellees' appeal in *Evangelinos v. Div. of Reclamation* (Sept. 20, 1989), Belmont App. No. 88–B–12, unreported, 1989 WL 109497 ("*Evangelinos I*"), holding that the mineral rights exception contained in appellees' surface rights deed was a valid waiver under Ohio Adm.Code 1501:13–3–04(D). Due to a downturn in the coal industry and subsequent litigation, intervenor did not commence mining upon issuance of the permit. Since R.C. 1513.07(A)(3) states that a permit shall expire if mining is not commenced within three years of issuance, appellant granted extensions, upon application by intervenor, on May 7, 1990, May 9, 1991 and May 4, 1992, staying expiration of the permit until its scheduled expiration in June 1992.

On December 16, 1992, appellant approved intervenor's application for a renewal permit. This permit was issued retroactive to June 17, 1992 and was to expire June 16, 1997. The board subsequently reversed appellant's decision, entering its findings, conclusions, and order on April 20, 1995, wherein the board determined that a 1988 amendment to Ohio Adm.Code 1501:13–3–04(D) required that a waiver satisfy a higher standard of specificity than had been required under the unamended Ohio Administrative Code provision applied in deciding appellees' prior appeal of the 1987 permit application. In reaching this decision, the board concluded that it had also misconstrued the waiver language in the prior appeal as being sufficiently broad to encompass a valid waiver of the three-hundred-foot restriction by appellees herein. The board also overruled appellant's assertion that the prior rulings of the board and of this court in *Evangelinos I* should have preclusive effect on relitigation of the present matter. Pursuant to R.C. 1513.14 and App.R. 4(A), intervenor and appellant filed these timely appeals on May 18, 1995 and May 22, 1995, respectively.

Intervenor-appellant presents one assignment of error, which provides:

"The board erred as a matter of law when it failed to give preclusive effect to a prior judgment involving the same issue and the same parties."

Appellant also presents one assignment of error, which provides:

"The board erred as a matter of law when it failed to give preclusive effect to an appellate court's judgment involving the same issue and same parties."

As the assignments of error address the same issue of law, they will be addressed together. Since the parties involved in *Evangelinos I* and the present appeal are the same, the sole issue presented is whether the issues decided by

this court in *Evangelinos I* were sufficiently similar to the issues presented in appellees' current appeal to bar relitigation by reason of *res judicata.*

In reviewing a decision of the Reclamation Board of Review, an appellate court shall confine its review to the record certified by the Reclamation Board of Review, and shall affirm the decision of the board unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with the law, in which case the court shall vacate the decision and remand to the board for such further proceedings as it may direct. R.C. 1513.14.

The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment) and issue preclusion (traditionally known as collateral estoppel). *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226.

"A valid, final judgment rendered upon the merits bars all subsequent actions based upon any *claim* arising out of the transaction or occurrence that was the subject matter of the previous action." (Emphasis added.) *Grava, supra,* syllabus.

"Collateral estoppel precludes the relitigation of an *issue* that has been '*actually and necessarily litigated and determined* in a prior action.'" (Emphasis added.) *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062.

■■■ *Res judicata,* whether claim preclusion (estoppel by judgment) or issue preclusion (collateral estoppel), applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding. *Grava, supra.* While *res judicata* does apply to administrative proceedings, it should be applied with flexibility. *Jacobs v. Teledyne, Inc.* (1988), 39 Ohio St.3d 168, 529 N.E.2d 1255. In *Toledo, F. & F. Ry. Co. v. Toledo & O.C. Ry. Co.* (1926), 114 Ohio St. 98, 150 N.E. 621, the court stated that a former judgment constitutes a bar to a subsequent action unless a subsequent change in the law has intervened.

Ohio Adm.Code 1501:13–3–04(D), effective 1982, provided in part:

"The waiver must be knowingly made and shall be separate from a lease or deed if the lease or deed does not contain language which authorizes mining within three hundred feet of the occupied dwelling *either* by an explicit waiver *or* by a legal description of the area to be mined that contains the area within three hundred feet." (Emphasis added.)

In affirming the decision of the board in *Evangelinos I,* this court determined:

" * * * The Evangelinos had knowledge of the terms of the mineral reservation at the time of their purchase of the surface rights to their property * * *.

" * * *

" * * * [The mineral reservation contained in appellees' deed] was sufficient to put the Skaggs, and later appellants, on notice that they were waiving certain rights to the property, including the right to protect their residence in the event that the mineral owner decided to extract the minerals.

"The fact that mining regulations were enacted in 1977 provided specific methods by which this waiver could occur does not change this basic fact. The Skaggs were not given the right to protect their residence by the 1977 regulation, but rather they had the right prior to executing a deed containing a mineral exception. Thus, the Skaggs waived a right they knew about in 1965, not a right that did not exist until 1977." *Id.* at 1 and 3.

Appellees assert that the effect of Ohio Adm.Code 1501:13–3–04(D)(1), amended in 1988, in conjunction with Ohio Adm.Code Chapter 1513, which provides that renewal permits must satisfy the same criteria as new permits, precludes exclusion of relitigation by *res judicata* because of the subsequent change in law. We disagree.

Appellee properly asserts that Ohio Adm.Code 1501:13–3–04(D)(1) sets forth a higher standard than that provided by the unamended Ohio Adm.Code 1501:13–3–04(D), applied by this court in *Evangelinos I*, regarding the validity of waivers. However, Ohio Adm.Code 1501:13–3–04(D)(2) provides significant insight as to the intent of the agency in applying the amended regulation. Ohio Adm.Code 1501:13–3–04(D)(2) provides:

"Where the applicant for a permit after August 3, 1977, had obtained a valid waiver prior to August 3, 1977, from the owner of an occupied dwelling to mine within three hundred feet of such dwelling, *a new waiver shall not be required.*" (Emphasis added.)

Appellees' assertion that essential language was omitted through an "editorial ellipsis" in the *Evangelinos I* decision is insignificant. The inclusion of appellees' essential deed language in no way alters the meaning of the reservation provision, which includes "*any* * * * buildings, or structures *now or hereafter* placed thereon, * * * whether caused by the mining and removal of the coal hereby excepted, or other coal now owned or hereafter acquired by GRANTOR, its successors or assigns." (Emphasis added.) As the record reveals that the dwelling was constructed circa 1840, the reservation language can only be construed as including it.

As set forth above, this court determined in *Evangelinos I* that the 1965 waiver attached to appellees' deed at the time of their purchase of surface rights to the property in 1984 was a valid waiver as to appellant's mineral rights reservation. Our prior determination of the meaning, intent and validity of the waiver, rendered upon a complete review of the record, is conclusive and precludes

relitigation of the issue by the board. The amendment of Ohio Adm.Code 1501:13-3-04(D) does not operate to create "changed circumstances" so as to make inapplicable the doctrine of *res judicata.*

Pursuant to Ohio Adm.Code 1501:13-3-04(D)(2), our prior determination that the waiver was valid prior to August 3, 1977 precludes the board from requiring appellant to provide a new waiver.

We therefore hold that the validity of appellees' waiver was actually and necessarily litigated on the merits in a prior action, where resolution of that issue determined the issue upon which appellees' claim is grounded. The doctrine of collateral estoppel precludes relitigation of this issue by the same parties.

For the foregoing reasons, we find that appellant's and intervenor-appellant's assignments of error have merit and hold that the decision of the Reclamation Board of Review, case No. RBR-5-94-018, is inconsistent with law.

Accordingly, this cause is reversed and remanded to the Reclamation Board of Review for further proceedings according to law and consistent with this opinion and the board is directed to approve R & F Coal Company's renewal permit that was granted by the Division of Reclamation.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. O'NEILL, P.J., and COX, J., concur.