OPINION
{¶ 1} This matter involves Appellants', C. T. Evangelinos, appeal from the Ohio Reclamation Commission's Order affirming the Chief of the Division of Mineral Resources Management's decision to renew surface coal mining Permit D-0680. Appellees are the Division of Mineral Resources Management, Ohio Department of Natural Resources ("Division") and the Intervenor, Oxford Mining Company ("Oxford").
 {¶ 2} It should be noted that the same or similar parties have twice previously been before this Court disputing the validity of the mineral rights reservation and the extent of Permit D-0680. C. T. Evangelinos v. Division of Reclamation
(Sept. 20, 1989), 7 Dist. No. 88-B-12; C. T. Evangelinos v.Ohio Division of Reclamation (1997), 117 Ohio App.3d 720,691 N.E.2d 365. This Court upheld the full grant of the mineral rights by Appellants' predecessors, which bound Appellants since they had sufficient notice in their deed. Id.
 {¶ 3} The Division issued surface coal mining and reclamation Permit D-0680 to the R F Company ("R F") in June of 1987, authorizing the mining of coal on 397.7 acres in Warren Township, Belmont County, Ohio. This permit area includes Appellants' residence and farm.
 {¶ 4} Since its issuance, Permit D-0680 has been renewed several times with five-year renewal terms. The last renewal, prior to the renewal at issue herein, was effective from June 17, 1997 to June 16, 2002. (Appellants' Brief, Exhibit A, October 2, 2003, Findings, Conclusions Order of the Commission, Findings of Fact "October 2, 2003, Order", p. 3, ¶ 6.)
 {¶ 5} While permits are issued for five-year terms, according to R.C. § 1513.07(A)(3), a mining permit shall terminate if mining has not commenced within three years after the permit is issued. However, R.C. § 1513.07(A)(3) also provides that the chief may grant reasonable extensions for certain designated reasons.
 {¶ 6} R F requested an extension to commence mining on December 14, 1998, but it was never acted on by the Division, presumably because R F requested an extension to commence mining by June 16, 1999, and this date was within the original three-year permissible period. (Hearing Tr., pp. 56-58, Appellants' Exh. 8.)
 {¶ 7} On December 17, 1998, R F filed a Notification of Temporary Cessation of Operations (a "TINA" form), which was granted by the Division. This TINA was to expire on June 15, 1999. (October 2, 2003, Order, p. 3, ¶ 7.) The Ohio Reclamation Commission's ("Commission") Findings of Fact explain in a footnote, that:
 {¶ 8} "R F Coal appeared to use the TINA form to forestall the commencement of mining on permit D-680. This is an awkward use of TINA status, as TINA status is intended to be used to allow active mines to suspend their operations for a limited period of time. See O.A.C. § 1501:13-9-16. Mining had not commenced on the permit D-680, therefore there was no reason to request temporary cessation of `mining.'" (October 2, 2003, Order, p. 3, ¶ 7, fn. 1.)
 {¶ 9} On January 21, 1999, after R F's 1997 permit renewal and the expiration of R F's TINA request, Oxford Mining Company applied for a transfer of Permit D-0680 from R F indicating Oxford's intent to take over the permit. According to the Commission, Oxford provided the requisite proof, including that it was now the rights owner of the land covered by the permit. (October 2, 2003, Order, p. 3, ¶ 9.)
 {¶ 10} Before Oxford's transfer request was approved, R F submitted a second TINA form requesting the postponement of mining until March of 2001. No ruling was ever made on this second R F TINA request. (October 2, 2003, Order, p. 4, ¶ 10, 12, fn. 5.) Thereafter, Oxford also submitted a TINA form requesting the continuation of the commencement of mining until March of 2002. This request did not receive a ruling, either. (October 2, 2003, Order, p. 4, ¶ 13.)
 {¶ 11} The permit was officially transferred to Oxford on March 28, 2000. (October 2, 2003, Order, p. 4, ¶ 11; Hearing Tr., p. 92.) In response to the public notice of the transfer, an informal conference was requested and held on May 10, 2002. (Hearing Tr., p. 85.)
 {¶ 12} It is undisputed, and the Commission concluded, that the three-year anniversary of the 1997 R F renewal permit was June 17, 2000. Further, "[b]y June 17, 2000, neither R F Coal nor Oxford Mining had commenced mining on this permit area. * * *". (October 2, 2003, Order, p. 4, ¶ 12.)
 {¶ 13} Thereafter, Oxford filed its application to renew Permit D-0680 on January 15, 2002, and the five-year renewal was granted in June of 2003 with a retroactive commencement date of June 18, 2002. (October 2, 2003, Order, pp. 4-5, ¶ 14, 19.)
 {¶ 14} Oxford commenced mining at the D-0680 permit area in July of 2002. The Commission noted that this commencement of mining was roughly five years and month after R F's June, 1997 renewal and approximately two years and four months after the transfer of the permit to Oxford in March of 2000. (October 2, 2003, Order, p. 5, ¶ 16, fn. 8.)
 {¶ 15} Thereafter, Appellants appealed to the Commission, which held a hearing and decided to affirm the permit's renewal on October 2, 2003. Appellants timely appealed this decision, and now assert three assignments of error.
 {¶ 16} Appellants' first assignment of error states:
 {¶ 17} "The Chief could not renew Permit D-0680, since the same expired on June 16, 2000."
 {¶ 18} This Court's standard of review on appeal of a reclamation commission's order is limited. Pleasant City v. OhioDept. of Natl. Resources, Div. of Reclamation (1993),67 Ohio St.3d 312, 617 N.E.2d 1103. R.C. § 1513.14(A)(3) provides, in part: "The court shall affirm the decision of the * * * commission unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with law, in which case the court shall vacate the decision and remand to the commission for such further proceedings as it may direct." This standard of review on an administrative appeal presumes that an agency's or board's actions are valid. R.C. § 1513.02; Buckeye ForestCouncil v. Division of Mineral Resources Mgmt., 7th Dist. No. 01 BA 18, 2002-Ohio-3010, ¶ 7; Weiss v. PUC (2000),90 Ohio St.3d 15, 17, 734 N.E.2d 775.
 {¶ 19} In reviewing a reclamation commission's decision, an appellate court must confine its review to the record certified by the reclamation commission. R.C. § 1513.14(A).
 {¶ 20} In addition, in determining whether to approve or deny a permit renewal, the burden of proof is on the renewal's opponents. O.A.C. 1501:13-4-06(B)(4).
 {¶ 21} This assigned error primarily concerns the interpretation of R.C. § 1513.07(A)(3):
 {¶ 22} "A permit shall terminate if the permittee has not commenced the coal mining operations covered by the permit within three years after the issuance of the permit, except that the chief may grant reasonable extensions of the time upon a showing that the extensions are necessary by reason of litigation precluding the commencement or threatening substantial economic loss to the permittee or by reason of conditions beyond thecontrol and without the fault or negligence of the permittee,
* * *." (Emphasis added.)
 {¶ 23} Appellants argue that Permit D-0680 clearly terminated pursuant to R.C. § 1513.07(A)(3) since mining had not commenced within three years after its June 17, 1997, issuance and no extension was granted. Thus, Appellants assert that the permit terminated by operation of law on June 17, 2000.
 {¶ 24} However, R.C. § 1513.07(A)(3) authorizes the chief to, "grant reasonable extensions of the time upon a showing that the extensions are necessary * * * by reason of conditions beyond the control and without the fault or negligence of the permittee[.]" Thus, an extension under this provision must be reasonable, necessary, and beyond the control and without the fault of the permittee.
 {¶ 25} Based on the statutory language employed, i.e., "upon a showing," Appellants argue that the legislature intended the permittee to request the extension demonstrating its need for the extension.
 {¶ 26} To the contrary, the Division states that it has automatically awarded Oxford, as a new permit transferee, a three-year extension to commence mining. There is no documented record of such an extension. Appellants claim that since there is no documentation of a requested extension or its authorization, it was not requested and cannot be granted. They further argue that there is no room in the statute for the Division's discretion to grant automatic extensions to permit transferees.
 {¶ 27} R.C. § 1513.07(A)(3) does not specify any procedure for requesting or granting an extension, thus, it does not specifically state that such request must be in writing. However, Appellants point to R.C. § 1513.11, in support of their argument that a record of the extension should exist:
 {¶ 28} "Every order of the chief of the division of mineral resources management or an authorized representative of the chief affecting the rights, duties, or privileges of an operator or the operator's surety or of an applicant for a license or permit shall be in writing and contain a finding of the facts upon which the order is based. Notice of the order shall be given by certified mail or personal service to the person whose rights, duties, or privileges are affected."
 {¶ 29} Oxford responds that the requirement found in R.C. §1513.11 that every order be in writing is inapplicable to Appellants pursuant to Mt. Perry Coal Co. v. Division ofForestry and Reclamation (1975), 44 Ohio App.2d 284,337 N.E.2d 802, 73 O.O.2d 303. The Tenth District Court of Appeals in Mt.Perry Coal Co., in assessing whether landowners of licensed mining property had standing to appeal from a division chief's order concerning mining operations held, in part, that:
 {¶ 30} "* * * a reasonable interpretation of the notice section specifically referred to in R.C. 1513.13 most reasonably may be interpreted as requiring that notice be given to the persons referred to in the prior portion of such section — i.e., the operator, the surety, and the applicant for the license. This interpretation, of course, would not require a notice to the landowner." Id. at 286-287.
 {¶ 31} Regardless, Appellants explain that their argument is not that the extension is void or invalid since they never received written notice. Instead, they believe the requirement contained in R.C. § 1513.11 supports their argument that the extension simply was never granted and never existed. If a person or company was "granted" an extension of time to commence mining, as authorized by R.C. § 1513.07(A)(3), there must be a writing memorializing it and providing notice of it to the affected person or company, i.e., Oxford.
 {¶ 32} In addressing Appellants' concerns on this issue, the Commission's Order recognizes that the Division's practice of allowing the transferee of a permit additional time, up to three years, to commence mining is not in writing. However, the Order rationalizes that a new transferee should be afforded the same three-year period to mobilize equipment and develop a coal market, as was afforded the prior permit holder. (October 2, 2003, Order, p. 7.) Thus, there is no apparent need for a separate, written order. Because we must defer to an agency's interpretation of its own rules, we must agree with this rationale.
 {¶ 33} Further, assuming that the Division erred in failing to issue Oxford's extension in writing, this does not affect Appellants' rights. The landowner is not entitled to written notice under R.C. § 1513.11. Thus, the landowner is not entitled to appeal such an order to the reclamation review board. Mt.Perry Coal Co., supra, at 286-287; R.C. § 1513.13.
 {¶ 34} In addition, the Division of Mineral Resources Management's permit manager, Russell W. Gibson ("Gibson"), testified on cross-examination as follows:
 {¶ 35} "Q. Will you agree that according to the records of your division, no extension of the three-year rule was requested within the three-year period?
 {¶ 36} "A. It's our position that no request [for an extension] was —
 {¶ 37} "* * *
 {¶ 38} "A. was required. So, as a result, no, there is no request [for an extension] in our files.
 {¶ 39} "* * *
 {¶ 40} "Q. There is no document in there that says your three-year * * * requirement is hereby extended, is there?
 {¶ 41} "A. There is no document because it was not required.
 {¶ 42} "* * *
 {¶ 43} "Q. Now, * * * in the chief's * * * findings * * * he says that it is the practice of the Division to give a new three-year period after the transfer of a permit. Are you familiar with that?
 {¶ 44} "A. I am —
 {¶ 45} "* * *
 {¶ 46} "Q. Now, when you say that's the practice, can you name any other companies that were given a three-year extension to commence mining upon the transfer of a permit?
 {¶ 47} "A. Well, literally every time we transfer a permit it starts that cycle anew." (Hearing Tr. pp. 68-71.)
 {¶ 48} Gibson further testified on re-direct that:
 {¶ 49} "Q. Can you now explain * * * why had not this permit here, D-680, * * * expired within three years from the date of 6-16 of 1997.
 {¶ 50} "* * *
 {¶ 51} "[A.] Because they are a new permittee at that point in time, they are granted another three-year period with which to commence mining, because the alternative — the alternative would have been slightly less than three months with which Oxford would have had the opportunity to commence mining or request an extension.
 {¶ 52} "* * *
 {¶ 53} "In reviewing — in reviewing this particular situation, where less than three months would — would pass before Oxford Mining would have the opportunity to commence mining, or to have to get an extension of time to commence mining, in the chief — in the Division's — in the Division's mind and practice, that is not a reasonable extension of time, three months.
 {¶ 54} "* * *
 {¶ 55} "Q. So did the Division, then, look at these transfers as a quasi extension of time, then?
 {¶ 56} "A. Well, I think — yes." (Hearing Tr., pp. 91-94.)
 {¶ 57} The Commission's Order states that in spite of the lack of written authority acknowledging or authorizing its practice of automatically allowing an extension to a permit transferee, the Division's acts in authorizing extensions to a new transferee is consistent with law and reason. (October 2, 2003, Order, p. 7.)
 {¶ 58} OAC 1501:13-4-06, which discusses permit applications, revisions and renewals, and transfers, assignments and sales of permit rights, does not specifically authorize an automatic extension of a transferee's time to commence mining. However, the practice is also not forbidden in the administrative code.
 {¶ 59} Further, even though the Commission believed the TINA forms were improperly used, it relied on R F's and Oxford's TINA submissions as evidence of their intent to delay the commencement of mining. (October 2, 2003, Order, p. 7.) The Commission concluded that since the permit was transferred in the third year of its issuance and since Oxford submitted a TINA form, the chief lawfully applied his discretion in authorizing the additional extension. Further, the requisite showing that an extension was necessary and beyond Oxford's control was inherent in their application to transfer the permit. (October 2, 2003, Order, pp. 10-11, ¶ 6, 7.)
 {¶ 60} In affirming the chief's renewal, the Commission's Order also relies on Oxford's timely application for renewal of the permit. (October 2, 2003, Order, p. 10, ¶ 5.) R.C. §1513.07(A)(4)(c) requires receipt of a permit renewal application at least 120 days before the expiration of the valid permit. A permit carries a right of successive renewal upon its expiration. R.C. § 1513.07(A)(4)(c).
 {¶ 61} The Ohio Supreme Court has held that: "`The primary purpose of the judiciary in the interpretation or construction of statutes is to * * * ascertain the legislative will.'" State v.Hooper (1979), 57 Ohio St.2d 87, 88, 11 O.O.3d 250,386 N.E.2d 1348, citing Henry v. Central Natl. Bank (1968),16 Ohio St.2d 16, 45 O.O.2d 262,242 N.E.2d 342, paragraph two of the syllabus. Further, when the statutory language employed clearly expresses the legislative intent, courts should not construe that language.Provident Bank v. Wood (1973), 36 Ohio St.2d 101, 106, 65 O.O.2d 296, 304 N.E.2d 378.
 {¶ 62} In the instant cause, there is no clear legislative intent relative to the procedure for authorizing extensions except that the chief may grant an extension based on reasons or conditions beyond the control of the permittee. R.C. §1513.07(A)(3). The applicable provisions never mention the grant of extensions to permit transferees.
 {¶ 63} Appellants claim that Ohio's statute must provide the same protection as the federal regulations governing mining operations. Surface Mining Control and Reclamation Act of 1977,30 U.S.C. § 1201 et seq.; Canestaro v. Faerber (1988),179 W.Va. 793, 374 S.E.2d 319.
 {¶ 64} The West Virginia Supreme Court in Canestaro, held that: "[w]hen a provision of the West Virginia Surface Coal Mining and Reclamation Act * * * is inconsistent with federal requirements, * * * the state act must be read in a way consistent with the federal act." Id. paragraph one of syllabus. Thus, Canestaro concluded that West Virginia law must make applications and permits available for public inspection at the courthouse of the county in which the mining is to occur, consistent with the federal requirements, and not simply at the local Department of Energy office. Id.
 {¶ 65} Appellants cite 30 C.F.R. § 773.19(e)(2), the federal regulation governing the initiation of mining operations, in support of their assertion that Ohio's laws must be consistent with the federal regulations. This regulation provides in part:
 {¶ 66} "(2) The regulatory authority may grant a reasonable extension of time for commencement of these operations, uponreceipt of a written statement showing that such an extension oftime is necessary, if —
 {¶ 67} "(i) Litigation precludes the commencement or threatens substantial economic loss to the permittee; or
 {¶ 68} "(ii) There are conditions beyond the control and without the fault or negligence of the permittee.
 {¶ 69} "* * *
 {¶ 70} "(4) Extensions of time granted by the regulatory authority under this paragraph shall be specifically set forth in the permit, and notice of the extension shall be made public by the regulatory authority." (Emphasis added.)30 C.F.R. § 773.19(e).
 {¶ 71} Notwithstanding the West Virginia Supreme Court's decision and 30 C.F.R. § 773.19(e), the Ohio Revised Code provides essentially identical grounds for an extension of time to commence mining. The only difference is that the federal regulation requires a permittee to file a written request for an extension and requires a record of any extensions granted.30 C.F.R. § 773.19(e).
 {¶ 72} Although there is no written record of Oxford's extension, this Court cannot conclude that the Division's practice of granting extensions to permit transferees is arbitrary, capricious, or contrary to law. Both R F and Oxford indicated their desires to seek extensions, and Oxford had applied for a transfer of the permit. With this in mind, the Division granted a three-year extension.
 {¶ 73} Although there is no statutory provision specifically authorizing "automatic" extensions, the Division's procedure was not contrary to law. The Division concluded that the extension was necessary and founded on conditions beyond Oxford's control. Thus, the statutory requirements were satisfied. Based on the foregoing, Appellant's first assignment of error lacks merit.
 {¶ 74} Appellant's second assignment of error asserts:
 {¶ 75} "The Chief could not properly renew the permit outside the time provided by statute."
 {¶ 76} Appellants claim that even if the permit did not terminate pursuant to statute, the permit, based on its own five-year term, expired. It is undisputed that the permit's last renewal, prior to the renewal at issue herein, was effective from June 17, 1997 to June 16, 2002.
 {¶ 77} Oxford filed its application to renew the permit on January 15, 2002, and Oxford commenced mining the D-0680 permit area in July of 2002. However, the Division did not renew the application in Oxford's favor until June, 2003.
 {¶ 78} Appellants assert that under the clear terms of R.C. §1513.07(I)(1), the Division chief was required to grant or refuse the renewal within sixty days of the informal conference, which was held on May 10, 2002. It is undisputed and the Commission concluded that the chief issued his decision almost one year after this deadline. (October 2, 2003, Order, p. 8.)
 {¶ 79} Based on the foregoing, Appellants argue that since there was no valid permit after June 16, 2002, and the chief did not renew it within the statutory time, then there was simply no permit to renew. R.C. § 1513.07(A)(2). The Commission agreed that the R.C. § 1513.07(I)(1) sixty-day decision period applies to the Division herein. (October 2, 2003, Order, p. 8.) However, the Commission concluded, that: "The Division's apparent disregard of time deadlines, while frustrating to both citizens and permittees, is simply not grounds for permit denial under the statute." (October 2, 2003, Order, p. 8.) We must agree with the Commission on this issue. Absent clear language in the code which provides for such a result, a permittee should not be punished for the chief's failure to act in a timely manner. Based on the foregoing, this assignment of error lacks merit.
 {¶ 80} Appellant's third and final assignment of error alleges:
 {¶ 81} "The Chief should have denied the renewal application."
 {¶ 82} Appellants argue that R.C. § 1513.07(E)(2)(d) required the chief to deny Oxford's permit renewal request because there was a pending petition to declare part of the property in Permit D-0680 unsuitable for mining during the time he was required to rule on the renewal application.
 {¶ 83} During the sixty-day period in which the chief was required to make his decision on the renewal application, the Village of Barnesville had pending a petition requesting that part of this permit property be declared unsuitable for mining.
 {¶ 84} R.C. § 1513.07(E)(2)(d) provides:
 {¶ 85} "(2) No permit application or application for revision of an existing permit shall be approved unless the application affirmatively demonstrates and the chief finds in writing on the basis of the information set forth in the application or from information otherwise available, which shall be documented in the approval and made available to the applicant, all of the following:
 {¶ 86} "* * *
 {¶ 87} "(d) The area proposed to be mined is not included within an area designated unsuitable for coal mining pursuant to section 1513.073 of the Revised Code or is not within an areaunder study for such designation in an administrative proceedingcommenced pursuant to division (A)(3)(c) or (B) of section1513.073 of the Revised Code * * *." (Emphasis added.)
 {¶ 88} The Division concedes that lands being studied for a designation of unsuitability cannot be proposed for mining. However, existing permits are exempt from lands unsuitable petitions. OAC 1501:13-3-05(B)(2). The Division chief compelled the applicants of the unsuitability petition to exclude this area from its petition since the area was already under permit.
 {¶ 89} Since the Division granted Oxford an automatic extension to commence mining, and it timely filed its renewal application, the property in the instant cause was not subject to the lands unsuitable designation. (October 2, 2003, Order, p. 9.) OAC 1501:13-3-05(B)(2). As such, Appellants' third assignment of error lacks merit.
 {¶ 90} Based on the foregoing, this Court hereby affirms the Commission's Findings, Conclusions, and Order in its entirety.
Donofrio, J., concurs.
DeGenaro, J., concurs.