OPINION
{¶ 1} Appellant, the Division of Mineral Resources Management, appeals from an Ohio Reclamation Commission decision vacating two civil penalties assessed against appellee, Cravat Coal Company, for violations of Ohio's coal mining laws.
 {¶ 2} On October 22, 2003, appellant's mineral resources inspector conducted an inspection of appellee's permit D-2131 site, which is a surface coal mining operation located in Harrison County. The inspector noticed a breached diversion ditch where the drainage was not passing through a siltation structure, a violation of R.C. 1513.16(A). Appellant subsequently issued a Notice of Violation (NOV) to appellee, designated as NOV 24433, and ordered appellee to repair the diversion ditch by November 12, 2003. Appellee completed the repairs in a timely manner.
 {¶ 3} On February 18, 2004, appellant's inspector conducted an inspection of appellee's permit D-2183 site, also a surface coal mining operation in Harrison County. The inspector noticed that appellee had improperly cut a trench in the ground so that water in a pit would drain from the mine site into a stream channel, a violation of R.C.1513.16(A). Appellant thereafter issued NOV 24491 to appellee for failing to direct all surface drainage to a siltation structure and ordered appellee to repair the situation. Appellee again completed the repairs in a timely manner.
 {¶ 4} On July 1, 2004, appellant issued a Civil Penalty Assessment (CPA) to appellee, designated as CPA 12280, in the amount of $600, for NOV 24433. Appellant issued this CPA 252 days after it issued NOV 24433. That same day, appellant issued CPA 12283, in the amount of $900, for NOV 24491. Appellant issued this second CPA 134 days after it issued NOV 24491.
 {¶ 5} Appellee filed administrative appeals of the two CPAs. The basis for the appeals was the excessive delay in issuing the CPAs. Appellee did not contest the violations themselves. The Reclamation Commission (Commission) consolidated the two appeals for its review.
 {¶ 6} The Commission conducted a hearing on the appeals on January 20, 2005. At the hearing, appellee argued that appellant was untimely in issuing the CPAs because it did not do so until well past the 30-day time frame set out in R.C. 1513.02(E)(3). Appellant asserted that the unexpected retirement of an assistant regional manager resulted in the long delay in issuing the CPAs.
 {¶ 7} The Commission ultimately vacated both CPAs. Appellant filed a timely notice of appeal on March 3, 2005.
 {¶ 8} Appellant raises two assignments of error. The assignments of error share a common basis in law and fact and, therefore, we will address them together. They state:
 {¶ 9} "THE RECLAMATION COMMISSION ERRED WHEN IT VACATED CIVIL PENALTY ASSESSMENTS BECAUSE THE PENALTY ASSESSMENTS WERE DELAYED — A FACTOR NOT AUTHORIZED BY THE GENERAL ASSEMBLY."
 {¶ 10} "THE RECLAMATION COMMISSION ERRED WHEN IT FAILED TO FOLLOW ESTABLISHED CASE LAW THAT STATUTES, SUCH AS R.C. 1513.02(E)(3), PROVIDING A TIME FOR THE PERFORMANCE OF AN OFFICIAL DUTY ARE TO BE CONSTRUED AS DIRECTORY, NOT MANDATORY."
 {¶ 11} R.C. 1513.02(E)(3) provides in relevant part:
 {¶ 12} "Upon the issuance of a notice or order charging that a violation of this chapter has occurred, the chief shall inform the operator within thirty days of the proposed amount of the penalty and provide opportunity for an adjudicatory hearing pursuant to section1513.13 of the Revised Code." (Emphasis added.)
 {¶ 13} The Commission determined that, in this case, where the statute provided that the chief will act within 30 days, yet the chief did not act for 134 or for 252 days, the chief's action was arbitrary, capricious, or otherwise inconsistent with law. Therefore, it concluded that the issuance of the CPAs was arbitrary, capricious, or otherwise inconsistent with law.
 {¶ 14} Appellant argues that the Commission could not rely on R.C.1513.02(E)(3)'s language as a basis for vacating the CPAs because R.C.1513.02(E)(3) is directory, not mandatory. It asserts that appellee's remedy was to file a writ of procedendo against the chief to force it to comply with the statutory time frame. Appellant argues that the 30-day time frame is only directory unless the General Assembly has indicated otherwise or prejudice can be established. Because R.C. 1513.02(E)(3) contains no penalty or particular result if the chief does not meet the 30-day time frame, appellant claims that it is not mandatory. Furthermore, it alleges that appellee was not prejudiced by the delay. Next, appellant argues that while the term "shall" is generally construed as mandatory, such is not the case when the term refers to the manner or time in which a public official is to exercise power or jurisdiction. Finally, appellant contends that federal courts have held that the same language in R.C. 1513.02(E)(3)'s federal counterpart,30 U.S.C. 1268, is directory.
 {¶ 15} This court uses a limited standard of review to review the Commission's order. C. T. Evangelinos v. Div. of Mineral ResourcesMgmt., 7th Dist. No. 03-BE70, 2004-Ohio-7061, at ¶ 18, citingPleasant City v. Ohio Dept. of Natl. Resources, Div. of Reclamation
(1993), 67 Ohio St.3d 312, 617 N.E.2d 1103. R.C. 1513.14 governs appeals from the Commission. R.C. 1513.14(A) provides in part: "The court shall affirm the decision of the commission unless the court determines that it is arbitrary, capricious, or otherwise inconsistent with law, in which case the court shall vacate the decision and remand to the commission for such further proceedings as it may direct."
 {¶ 16} Under this standard of review, we presume that the agency's or board's actions are valid. Id., citing R.C. 1513.02. Furthermore, "[i]t is a well-settled rule that courts, when interpreting statutes, must give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command." Swallow v. Indus. Comm. (1988), 36 Ohio St.3d 55,57, 521 N.E.2d 778.
 {¶ 17} Additionally, in reviewing the Commission's decision, an appellate court must confine its review to the record certified by the Commission. R.C. 1513.14(A).
 {¶ 18} First, we must address whether appellee's appeal meets the requirements set out in R.C. 1513.02(E)(3). As to appeals, the statute provides:
 {¶ 19} "The person charged with the penalty then shall have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, file a petition for review of the proposed assessment with the secretary of the reclamation commission pursuant to section 1513.13 of the Revised Code." R.C. 1513.02(E)(3).
 {¶ 20} Thus, the statute appears to provide two grounds for appealing a CPA to the Commission: (1) to contest the amount of the penalty; and (2) to contest the fact of the violation.
 {¶ 21} Appellee's appeal to the Commission meets these requirements. While appellee states in its brief that it did not contest the amount of the fines, in effect, it did. Appellee's basic argument was that appellant should not have issued the CPAs because it failed to abide by the 30-day time limit. Looked at another way, appellee argued that the fines should have been zero dollars based on appellant's tardy issuance of the CPAs. Furthermore, appellee's representative testified at the hearing that appellee's position was that the penalties should be "reduced or waived." (Tr. 54-55). Thus, at the hearing, appellee specifically argued that it was contesting the amount of the penalty, which brings it within the appeal criteria of R.C. 1513.02(E)(3).
 {¶ 22} We must presume that the Commission's decision vacating the CPAs was valid. Buckeye Forest Council v. Division of Mineral ResourcesManagement, 7th Dist. No. 01-BA-18, 2002-Ohio-3010, citing R.C. 1513.02. As noted above, when interpreting a statute, we must "give due deference to an administrative interpretation formulated by an agency that has accumulated substantial expertise, and to which the General Assembly has delegated the responsibility of implementing the legislative command."Swallow, 36 Ohio St.3d at 57.
 {¶ 23} The Commission chose to proceed with appellee's appeal. Thus, it concluded that the appeal was proper and that it had jurisdiction to hear the appeal. Given our standard of review and appellee's argument regarding reduction or waiver of the penalties, we must defer to the Commission's decision on this matter.
 {¶ 24} Next, we must move on to consider the merits of appellant's argument. While appellant focuses its argument on whether R.C.1513.02(E)(3)'s 30-day frame is mandatory or directory, we need not decide that issue.
 {¶ 25} R.C. 1513.02(E)(3) provides that, "[u]pon the issuance of a notice or order charging that a violation of this chapter has occurred, the chief shall inform the operator within thirty days of the proposed amount of the penalty and provide opportunity for an adjudicatory hearing pursuant to section 1513.13 of the Revised Code." In this case, appellant did not inform appellee of the penalties until 252 and 134 days after the issuance of the underlying NOVs.
 {¶ 26} The Commission did not rule on whether the 30-day requirement set out in the statute was mandatory or directory. Instead, it concluded that under the facts of this case, appellant's lengthy delays of 252 and 134 days in assessing the penalties were arbitrary and capricious. The evidence offered at the hearing supports the Commission's decision.
 {¶ 27} As to CPA 12280, Wayne Shalk, appellant's assistant regional manager for the northern region and the person who issued the CPAs, testified as follows:
 {¶ 28} "Q. Okay. Why did it take until July 1 of 2004 to assess this penalty?
 {¶ 29} "A. The — there was a manpower problem in the southern region. I work for the northern region, and the — when the Division of Mines and Reclamation merged with the Division of Oil and Gas, the new duties were assigned to one of the assistant reginal [sic.] managers in each region. Not too long after the merger took place, one of the assistant managers in the southern region unexpectedly retired. His duties were to help manage the oil and gas program.
 {¶ 30} "Q. And which — I'm sorry, which person was this now?
 {¶ 31} "A. That — his name — that was Dick Shockley.
 {¶ 32} "Q. Okay.
 {¶ 33} "A. The other regional — assistant regional manager, Joe Hoerst, was assigned the duties of as — processing the civil penalties assessments. However, his background in the oil and gas program through the day-to-day necessities required him to take on Mr. Shockley's duties in addition to what he was assigned. So the processing of the civil penalty assessments took longer so we developed a large backlog. And in 2004, I started going down to the southern region to help get rid of this old backlog. So that's why it took such a long time to issue the Civil Penalty Assessment." (Tr. 43-44).
 {¶ 34} As to CPA 12283, Shalk testified:
 {¶ 35} "Q. Okay. Why did — why did it take the Division until July 1, 2004 to assess this penalty? Was this essentially the same reasons as the other one?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. Okay.
 {¶ 38} "A. Lack of manpower causing a backlog in issuing the CPAs." (Tr. 5152).
 {¶ 39} Appellant did not deny that it took a long while to issue the penalties to appellee. Instead, appellant attempted to justify the long delay by blaming it on a manpower shortage caused by the retirement of one employee. Given this evidence, it was within the Commission's discretion to conclude that the CPAs should be vacated based on the long delay appellant took to issue them.
 {¶ 40} Accordingly, appellant's two assignments of error are without merit.
 {¶ 41} For the reasons stated above, the Commission's judgment is hereby affirmed. Waite, J., dissents. See dissenting opinion attached.
DeGenaro, J., concurs in judgment only.