{¶ 42} I must respectfully dissent from the majority opinion in this appeal. The Appellant, Division of Mineral Resources Management ("Division"), has appealed the decision of the Ohio Reclamation Commission ("Commission") vacating two civil penalties assessed against Appellee, Cravat Coal Company ("Cravat Coal") for violations of R.C. Chapter 1513, Ohio's coal mining laws. There is no dispute among the parties that Cravat Coal committed the two statutory violations, and that the Division had and has authority to issue Civil Penalty Assessments ("CPAs") for those violations. Cravat Coal appealed the two CPAs to the Commission on the grounds that the penalties were not issued within 30 days from the date Cravat Coal was notified of the violations, as set forth in R.C. § 1513.02(E)(3). The Commission agreed with Cravat Coal and vacated the CPAs because one had been issued 134 days and the other 252 days after notice. Both of these notices were well outside of the 30-day time limit found in the statute. Although this Court's standard of review of the Commission's order is a very deferential one, it appears from a careful reading of R.C. § 1513.02(E)(3) that the Commission had no jurisdiction to consider the issue raised by Cravat Coal on administrative appeal. Therefore, I would vacate the Commission's order and reinstate the civil penalties imposed by the Division.
 {¶ 43} The facts of this case are undisputed. The sole issue in this appeal has to do with the significance and effect of the delay in time by the Division in issuing the two CPAs.
 {¶ 44} I agree with the majority that the standard of review that this Court uses to review a reclamation commission's order is a limited one, and that we should affirm the order unless it is arbitrary, capricious, or otherwise inconsistent with law. R.C. § 1513.14(A)(3); C. T.Evangelinos v. Div. Of Mineral Resources Mgmt., 7th Dist. No. 03 BE 70,2004-Ohio-7061. In this case, it would appear that the reclamation commission's order is contrary to law because it does not have jurisdiction to review the issue that was raised by Cravat Coal.
 {¶ 45} The statute at issue in this case, R.C. § 1513.02(E)(3), states in part:
 {¶ 46} "(3) Upon the issuance of a notice or order charging that a violation of this chapter has occurred, the chief shall inform theoperator within thirty days of the proposed amount of the penalty and provide opportunity for an adjudicatory hearing pursuant to section1513.13 of the Revised Code. The person charged with the penalty then shall have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty or the fact of the violation, file a petition for review of the proposed assessment with the secretary of the reclamation commission pursuant to section1513.13 of the Revised Code." (Emphasis added).
 {¶ 47} The interpretation of the time provisions in R.C. §1513.02(E)(3) is a case of first impression in this Court, and apparently with any appellate court in Ohio. The Division has raised the question as to whether it is permitted to assess civil penalties after 252 days and 134 days have passed even though the statute requires the Division to inform the violator of the proposed fine within 30 days, and when the statute contains no repercussions for failing to meet the 30-day deadline. Although the Division has not stated its argument in terms of a jurisdictional problem, the wording of R.C. § 1513.02(E)(3) certainly appears to create a jurisdictional impediment with respect to Cravat Coal's appeal of the two CPAs. We would normally deal with this jurisdictional issue prior to addressing any other merits of the appeal.
 {¶ 48} R.C. § 1513.02(E)(3) states: "The person charged with the penalty then shall have thirty days to pay the proposed penalty in full or, if the person wishes to contest either the amount of the penalty orthe fact of the violation, file a petition for review of the proposed assessment with the secretary of the reclamation commission pursuant to section 1513.13 of the Revised Code." (Emphasis added.)
 {¶ 49} The statute provides two grounds for appealing a CPA to the Commission: a) to contest the amount of the penalty; and b) to contest the fact that there was a violation. Cravat Coal did not raise either of these two issues as grounds on appeal. Both CPAs were appealed solely on the grounds that the Division was without authority to issue each CPA after the 30-day time limit found in the statute had expired. Appellee's brief on appeal states quite explicitly that it has not and is not contesting that the violations occurred and that it, "did not, is not, and will not contest the amount of the penalties." (Appellee's brief, p. 7.) Since there are no other grounds permitted by statute for appealing the CPAs to the Commission, and because Cravat Coal clearly does not assert either of the only two grounds for appeal as listed, the logical conclusion is that the Commission had no jurisdiction to hear or decide this administrative appeal.
 {¶ 50} The right to an appeal to the Commission is created by statute, and the statutory requirements governing an administrative appeal must be strictly followed in order to effectuate the appeal. See, e.g.,Manfredi Motor Transit Co. v. Limbach (1988), 35 Ohio St.3d 73, 76,518 N.E.2d 936. The Ohio Supreme Court has often reaffirmed the proposition that: "[a]n appeal, the right to which is conferred by statute, can be perfected only in the mode prescribed by statute. The exercise of the right conferred is conditioned upon compliance with the accompanying mandatory requirements." Zier v. Bureau of UnemploymentCompensation (1949), 151 Ohio St. 123, 84 N.E.2d 746, paragraph one of the syllabus; reaffirmed by Hansford v. Steinbacher (1987),33 Ohio St.3d 72, 72, 514 N.E.2d 1385; further reaffirmed by Ramsdell v. OhioCiv. Rights Comm. (1990), 56 Ohio St.3d 24, 27, 563 N.E.2d 285.
 {¶ 51} The Ohio Supreme Court has found certain aspects of R.C. §1503.02(E)(3) to be jurisdictional, such as the provision requiring the party appealing a CPA to forward the amount of the penalty to the secretary of reclamation commission. See Lyle Const., Inc. v. Ohio Dept.of Natural Resources, Div. of Reclamation (1987), 34 Ohio St.3d 22, 27,516 N.E.2d 209 (reviewing former R.C. § 1503.02(F)(3), now redesignated as § 1503.02(E)(3)). Furthermore, the statutory limits of subject matter jurisdiction of a state agency or board cannot be waived or expanded upon by mutual agreement of the parties. Painesville v. Lake Cty. BudgetComm. (1978), 56 Ohio St.2d 282, 284, 10 O.O.3d 411, 383 N.E.2d 896. Based on these authorities, the Commission was required to dismiss Cravat Coal's attempt at administrative appeal due to lack of subject matter jurisdiction, at least once it became clear that Appellee was challenging neither the amount of the penalty nor the fact that a violation had occurred, the only two reasons on which an aggrieved person may base an appeal.
 {¶ 52} The statutory restrictions on the types of issues that may be appealed to the Commission are consistent with other types of administrative appeals. Workers' compensation cases provide the most obvious examples of highly restricted administrative appeals: "The claimant or the employer may appeal an order of the industrial commission made under division (E) of section 4123.511 of the Revised Code in any injury or occupational disease case, other than a decisionas to the extent of disability to the court of common pleas * * *." (Emphasis added.) R.C. § 4123.512(A). The Ohio Supreme Court has routinely interpreted this language to mean that parties in workers' compensation cases are limited to appealing whether or not the employee has a right to participate in the workers' compensation fund, or more specifically, whether the injury, disease, or death occurred in the course of and arising out of employment. State ex rel. Liposchak v.Indus. Comm. (2000), 90 Ohio St.3d 276, 279, 737 N.E.2d 519; Felty v.ATT Technologies, Inc. (1992), 65 Ohio St.3d 234, 602 N.E.2d 1141;State ex rel. Evans v. Indus. Comm. (1992), 64 Ohio St.3d 236,594 N.E.2d 609. Although parties would often prefer to appeal other issues to the court of common pleas, they are prevented from doing so on jurisdictional grounds. This Court itself has affirmed the dismissal, on jurisdictional grounds, of a workers' compensation appeal in which the City of Youngstown argued that its workers' compensation account should not be charged for the employee's injuries because the employee was, in fact, employed somewhere else at the time of the injury. City ofYoungstown v. DeSalle (June 23, 1987), 7th Dist. No. 86 C.A. 177. Even though the identity of the employer might be considered as a fairly basic and fundamental aspect of any workers' compensation claim, R.C. § 4123.512 does not permit such a question to be appealed, and therefore, DeSalle ruled that the issue could not be appealed.
 {¶ 53} Other types of administrative decisions allow no right of appeal whatsoever: "The determination by STRS and its retirement board, STRB, of whether a person is entitled to disability retirement benefits is reviewable by mandamus because R.C. 3307.62 does not provide any appeal from the administrative determination." State ex rel. Pipoly v.State Teachers Retirement Sys., 95 Ohio St.3d 327, 2002-Ohio-2219,767 N.E.2d 719, ¶ 14. "[N]o appeal by way of R.C. 2506.01 is available to aggrieved parties in an annexation proceeding." State ex rel.Painesville v. Lake Cty. Bd. of Commrs. (2001), 93 Ohio St.3d 566, 571,757 N.E.2d 347. "A decision by the State Employment Relations Board whether or not to issue a complaint in an unfair labor practice case is not reviewable pursuant to R.C. Chapter 119 or R.C. 4117.02(M) and 4117.13(D)." Ohio Assn. of Pub. School Emp., Chapter 643, AFSCME/AFL-CIOv. Dayton City School Dist. Bd. of Edn. (1991), 59 Ohio St.3d 159,572 N.E.2d 80, syllabus.
 {¶ 54} The fact that Appellee was not permitted, by statute, to appeal the delay in issuing the CPA does not mean that Appellee was without recourse. If Appellee had determined that time was of the essence in receiving a response from the Division, Appellee could have requested a prompt answer from the Division, or could have filed a writ of procedendo in order to force the Division to issue a response. A writ of procedendo is often the only legal device available to compel a public official to perform a duty after a deadline has passed. See, e.g.,State ex rel. Bunting v. Haas, 102 Ohio St.3d 161, 2004-Ohio-2055,807 N.E.2d 359, ¶ 9 (holding that a writ of procedendo is appropriate to force a trial judge to rule on a petition for postconviction relief after the 180-day deadline has passed); State ex rel. Grove v.Nadel (1998), 81 Ohio St.3d 325, 327, 691 N.E.2d 275 (a writ of procedendo is the appropriate procedure to compel a trial judge to journalize a judgment entry after the 30-day deadline in Sup.R. 7(A) has passed).
 {¶ 55} There is no indication in the record that Appellee asked the Division to issue the CPAs in a timely manner or that Appellee filed a writ of procedendo to compel the issuance of the CPAs. We have recently ruled that a party who could have filed a writ of procedendo and did not has effectively waived the right to appeal any error arising out of the delay in proceedings: "The failure to seek the writ of procedendo during the pendency of the decision precludes the complaining party from challenging the delay on appeal after the decision is made."El-Mahdy v. Mahoning Nat. Bank, 7th Dist. No. 04 MA 41, 2005-Ohio-1341, ¶ 37, citing In re Davis (1999), 84 Ohio St.3d 520, 524,705 N.E.2d 1219. Based on these cases, even before reaching the full substance of Appellant's argument, I must conclude that there was no jurisdiction to hear this appeal, and that even if there was, Cravat Coal waived the right to raise the alleged error on appeal by failing to file a writ of procedendo.
 {¶ 56} The jurisdictional issue in this case overlaps to a certain extent the Division's first assignment of error. The Division contends that the Commission was limited to a very narrow scope of review and should have restricted itself to examining the two appealable issues listed in R.C. § 1513.02(E)(3), namely, the existence of the violation and the amount of the penalty. The Commission reviews these two issues under an abuse of discretion standard: "The commission shall affirm the notice of violation, order, or decision of the chief unless the commission determines that it is arbitrary, capricious, or otherwise inconsistent with law[.]" R.C. § 1513.13(B). Appellant argues that the Commission's decision is inconsistent with law because the 30-day deadline in R.C. § 1513.02(E)(3) is advisory only, because there are no statutory consequences for violating the 30-day deadline, and because the Commission vacated the CPAs based on a factor not authorized by the statute.
 {¶ 57} Appellant acknowledges that R.C. § 1513.02(E)(3) uses that word "shall" when it directs the chief of the Division to issue a CPA within 30 days: "the chief shall inform the operator within thirty days of the proposed amount of the penalty * * *." Appellant acknowledges that the word "shall" is generally construed as a command, as a mandatory act.Dept. of Liquor Control v. Sons of Italy Lodge 0917 (1992),65 Ohio St.3d 532, 534, 605 N.E.2d 368. However, Appellant also cites the well-established exception to this general rule with regard to statutes, rules, or regulations dealing with the manner or time of performing an official act: "Statutes which relate to the manner or time in which power or jurisdiction vested in a public officer is to be exercised, and not to the limits of the power or jurisdiction itself, may be construed to be directory, unless accompanied by negative words importing that the act required shall not be done in any other manner or time than that designated." Schick v. City of Cincinnati (1927), 116 Ohio St. 16,155 N.E. 555, paragraph one of syllabus; see also State ex rel. Larkins v.Wilkinson (1997), 79 Ohio St.3d 477, 683 N.E.2d 1139; State ex rel.Smith v. Barnell (1924), 109 Ohio St. 246, 142 N.E. 611.
 {¶ 58} This exception to the general rule has been reaffirmed numerous times by the Ohio Supreme Court, as in the recent case of State ex rel.Ragozine v. Shaker, 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192:
 {¶ 59} "'As a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure.' " Id. at ¶ 13, quoting State ex rel. Jones v. Farrar (1946), 146 Ohio St. 467,32 O.O. 542, 66 N.E.2d 531, paragraph three of the syllabus.
 {¶ 60} The statute at issue in Ragozine stated that a trial court "shall" hold a hearing within a specified number of days after the filing of a complaint seeking the removal of a public officer. Although the trial court had missed the statutory deadline, the Ohio Supreme Court concluded that the deadline in the statute was directory, not mandatory, and that the trial court's failure to meet the statutory deadline did not deprive it of jurisdiction to hear the case.
 {¶ 61} There is nothing in R.C. § 1513.02(E)(3), other than its use of the word "shall," that would prevent the Division from issuing a CPA after the 30-day deadline has passed. Based on the longstanding and consistent interpretation of the Ohio Supreme Court in this matter, the word "shall" in this context is directory rather than mandatory, and the Division retained the authority to issue the belated CPAs. Because the CPAs were validly issued, and because Appellee had no right to challenge that tardiness of issuing the CPAs in a direct administrative appeal, it is apparent that the Commission should have dismissed Appellee's administrative appeal and should not have vacated the CPAs.
 {¶ 62} Appellant's next argument is that the Commission conducted its review based on factors not found in R.C. § 1513.02 or other related statutes. According to R.C. § 1513.02(E)(1), the Division was required to consider four factors prior to issuing the CPA: "In determining the amount of the penalty, consideration shall be given to the person's history of previous violation at the particular coal mining operation; the seriousness of the violation, including any irreparable harm to the environment and any hazard to the health or safety of the public; whether the person was negligent; and the demonstrated diligence of the person charged in attempting to achieve rapid compliance after notification of the violation." These factors all relate to the amount of the penalty, and the amount of the penalty is something which may be appealed. The Commission, though, based its decision on the fact that the CPAs were issued after the 30-day deadline had passed, which is not a factor listed in R.C. § 1513.02. Once again, the non-statutory factor that the Commission used was improper primarily because it was jurisdictional; it relates to a matter that could not be appealed in the first place, namely, the authority of the Director to issue a CPA after the 30-day deadline in R.C. § 1513.02(E)(3) had passed.
 {¶ 63} The Division cites a case from this Court, C. T. Evangelinosv. Div. Of Mineral Resources Mgmt., 7th Dist. No. 03 BE 70,2004-Ohio-7061, that has some relevance to this appeal. The underlying dispute in Evangelinos concerned the validity of a mining permit after the Division had issued a renewal of the permit. The mining company that originally held the permit had filed notices that it was temporarily suspending operations, and then applied to the Division to transfer its permit to another mining company. The transfer was approved, but the new permit owner also filed notices requesting postponement of mining operations. According to R.C. § 1513.07(A)(3), a mining permit shall terminate if mining has not commenced within three years after the permit is issued. However, R.C. § 1513.07(A)(3) also provides that the chief of the Division may grant reasonable extensions for certain designated reasons.
 {¶ 64} During the fourth year of the permit, the new mining company filed to renew the permit for another five years, and this renewal was retroactively granted 17 months later.
 {¶ 65} After the permit was renewed, the owner of the land who had granted the mining rights filed an appeal to the Commission challenging the validity of the renewed mining permit. The landowner argued, in part, that the Division was required by R.C. § 1513.07(l)(1) to rule on the renewal application within 60 days, and that there was no statutory authority to grant the renewal 17 months after the mining company had applied for it. Id. at ¶ 78.
 {¶ 66} The Commission concluded that the statute in question did not establish a penalty for the Division's failure to act within 60 days, and that "[t]he Division's apparent disregard of time deadlines, while frustrating to both citizens and permittees, is simply not grounds for permit denial under the statute." Id. at ¶ 79. We agreed with the Commission's interpretation of the statute and affirmed their decision.
 {¶ 67} The Evangelinos holding is completely consistent with our analysis in the instant case. Similar to our holding inEvangelinos, I would also conclude in this appeal that there are no statutory consequences set forth if the Division issues a CPA after the 30-day deadline, and thus, that the CPAs were validly issued even after 134 and 252 days. Appellee would have us further address the reasonableness of the delay, but as I stated earlier, Appellee has no right to appeal this issue since it does not pertain to the amount of the penalty or the fact of the violation itself. Thus, "reasonableness" should not be an issue.
 {¶ 68} Even if the record did not clearly reflect, in my opinion, that the matter should have been dismissed on jurisdictional grounds, I would still reverse the decision of the Commission and reinstate the fines. The record reflects that Cravat Coal did not assert or prove that they were harmed by the delay in issuing the CPAs. Cravat Coal obviously knew that some sort of penalty would be forthcoming because it admitted from the beginning that it committed the violations. It was also to their advantage to ignore the fact that no CPAs were being issued because the delay allowed Cravat Coal to keep using the funds that would be needed to pay the fines that were ultimately imposed.
 {¶ 69} The decision of the majority concerns me, also, because of the precedent it sets. The record clearly indicates that the delay in issuing the CPAs was due to a manpower shortage in the Division of Mineral Resources. If there is a manpower shortage, then it is likely there will be further delays in issuing CPAs, and further challenges to the validity of other CPAs based merely on how long it took to issue each CPA. It would appear that the best way to thwart the enforcement efforts of the Division is for mining companies to violate as many regulations as possible, thus overwhelming the Division with work and ensuring that no CPAs will be issued in a timely fashion.
 {¶ 70} I am persuaded by Appellant's arguments and would vacate the order of the Commission based on its lack of subject matter jurisdiction to hear the issue raised by Appellee in the administrative appeal. Therefore, I must dissent from the majority opinion in this case.