OPINION
{¶ 1} Plaintiff-appellant Amr H. El-Mahdy, M.D., et al. appeals the decision of the Mahoning County Common Pleas Court which adopted the decision of the magistrate and entered judgment in favor of defendant-appellee Mahoning National Bank. The main issues before us concern whether the decision finding that appellee did not breach its fiduciary or contractual duties is supported by the evidence, whether appellant was prejudiced by the magistrate's delay in rendering its decision, and whether appellant was properly denied a jury trial. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} In December 1996, appellee's trust department agreed to tend to appellant's financial affairs during his relocation to Egypt. A dispute arose after appellant's health insurance was canceled. In December 1998, appellant, along with his wife and child, filed a complaint against appellee. Basically, appellant alleged a breach of fiduciary and contractual duties for failing to timely pay a health insurance bill. Appellant claimed that he gave the bill to Trust Officer John Zador at their December 26, 1996 meeting with instructions that he make a $2,600 payment to Blue Cross/Blue Shield on December 27, 1996.
 {¶ 3} The case was previously before this court after the trial court imposed dismissal as a sanction for a discovery violation. We reversed and remanded because appellant was not given time to respond to the motion for sanctions and was not given an opportunity to correct the problem. El-Mahdy v. Mahoning Natl. Bank (July 22, 2002), 7th Dist. No. 01CA27.
 {¶ 4} On remand, the case was assigned to a magistrate for trial. Appellant's counsel then withdrew. On January 7, 2003, appellant filed a motion for a jury trial. In a February 28, 2003 decision, the magistrate denied appellant's request for a jury trial and bifurcated the trial into liability and damages phases.
 {¶ 5} A hearing on liability was tried before the magistrate on April 22, 2003. When no decision had been entered after nine months, appellant filed a motion with the trial court requesting review of the case. A few days later, on February 3, 2004, the magistrate issued a decision in favor of appellee. The magistrate specified that Mr. Zador was more credible than appellant.
 {¶ 6} Appellant filed timely objections. On February 25, 2004, the trial court found no error in the magistrate's decision and adopted that decision. Appellant filed a timely appeal to this court. Thereafter, this court held the appeal in abeyance to allow the trial court to enter a final appealable order that contained an actual judgment. On April 27, 2004, the trial court found that appellant failed to establish any breach of duty and entered judgment in favor of appellee. This appeal was then reactivated.
 APPELLANT'S BRIEF {¶ 7} Appellant filed a brief on March 5, 2004. However, we took issue with the form and content of this brief and held that appellant had thirty days to file an acceptable brief that conformed to the Appellate Rules of Procedure, most particularly App.R. 16. Appellant then filed an amended brief. The bank filed a motion to dismiss the appeal or to strike the amended brief, arguing that it still did not comply with the Appellate Rules and that it contained unreviewable and scandalous material.
 {¶ 8} On May 26, 2004, this court agreed that the amended brief still failed to comply with App.R. 16(A). We noted that there was no statement of the case or statement of facts, that he listed assignments of error that are not within the power of the court to address, that he used legal jargon without identifying how it is applicable, that he failed to show how the cited cases applied, and that the brief was not cohesive, coherent, or logical. We struck the brief but again allowed appellant thirty days to file a brief which conformed to App.R. 16(A) and raised proper legal issues subject to review by the court with proper cites and references to the record.
 {¶ 9} Appellant filed another brief on June 25, 2004. Once again, appellee filed a motion to dismiss or strike on the same grounds. On August 16, 2004, we overruled the motion to dismiss, but we advised that appellant's collateral arguments on criminal conspiracy and other scandalous matters would not be considered.[1]
 {¶ 10} We explained that we would only consider the assignments of error and arguments directed to the specific judgment being appealed. We concluded that the essential issue on appeal was whether the trial court's judgment finding that the bank did not violate a fiduciary or contractual duty was proper. After being granted two extensions, appellee's brief was filed in October 2004.
 PROPRIETY OF JUDGMENT FOR BANK {¶ 11} From what we could glean from appellant's lengthy argument, he claims that the evidence showed that the bank breached its fiduciary and/or contractual duty to pay his health insurance on time and that their breach of duty caused his health insurance to be canceled and caused him damages. (As relief, he asks us to award him forty million dollars, although only the liability phase was heard below.)
 {¶ 12} Appellant argues that Mr. Zador forged and altered documents which were submitted as evidence in this case. Appellant concludes that the magistrate was wrong to find that it was more likely that appellant forgot to pay his bills and then altered the exhibits. He argues that his evidence is believable, competent, and credible, and that the judgment for the bank is against the manifest weight of the evidence.
 {¶ 13} Specifically, appellant claims that on December 26, 1996, he met with Mr. Zador and gave him three bills, Sears, Visa, and Blue Cross/Blue Shield. He also claims that he gave Mr. Zador written instructions to pay these bills, including a request to pay $2,600 to Blue Cross/Blue Shield. He states that Mr. Zador promised that he would pay this bill the next day.
 {¶ 14} Appellee presented its version of a piece of paper received from appellant on December 26, 1996. Defendant's Exhibit B. See, also, Plaintiff's Exhibit 3. It was basically just a list entitled, "Cashier Checks," that showed amounts and entities.
 {¶ 15} A different version of this exhibit was submitted by appellant as Plaintiff's Exhibit 3. The differences were substantial: appellant's version said that three bills, including the health insurance bill, were attached; appellant's version stated, "Mr. J. Zador please issue the following checks for me today;" appellant's version had the health insurance bill marked very important; appellant's version contained a statement at the bottom including the comment, "please mail others ASAP please, thanks" with his signature.
 {¶ 16} Mr. Zador testified that he did not alter, forge, or place white-out on any documents. (Tr. 142). He disclosed that appellant had to go downstairs (to the teller) to order the cashier's checks that he requested on the list and thus he must have changed his mind on the Sears, Visa, and Blue Cross checks. (Tr. 133-134). He denied that appellant gave him any bills on December 26, 1996 or instructions to make immediate payments to Blue Cross/Blue Shield, Visa, or Sears. (Tr. 131-132). He noted that if appellant had given him bills, he would have paid them. (Tr. 132, 141, 180).
 {¶ 17} Mr. Zador testified that if he is given general instructions to pay bills, he cannot pay them until he receives a bill with the account number. (Tr. 156). He also directed the court to Plaintiff's Exhibit 17, instructions from appellant dated December 18, 1996. Within these seven pages, appellant merely stated that Blue Cross/Blue Shield Health Insurance is $620 per month and is due every two to three months. Upon this background, Mr. Zador waited for a bill.
 {¶ 18} He then received a bill from Blue Cross/Blue Shield sometime in January or February 1997, which he paid on February 27, 1997. In fact, he sent Blue Cross $1,281.60, the "current billing" amount, prior to the March 1, 1997 end of coverage period date listed on the bill. He said that when paying bills on a new account, the bank only pays the current amount. (Tr. 155).
 {¶ 19} Mr. Zador also explained that he did not pay the "previous balance/credit" in the amount of $1,305.76 because he assumed appellant had already paid that amount. (Tr. 139-140). He continued that he made his assumption based upon the timing since by the time he received the bill, the payment's due date and coverage period for the previous balance were long since past and that if appellant had not previously paid the premium for insurance covering the end of 1996, then the policy would have canceled. (Tr. 175-177). He noted that appellant's housekeeper was checking his post office box and that he was not to check on the mail until she left to meet appellant in Egypt. (Tr. 135).
 {¶ 20} Appellant concludes that this evidence shows that he gave Mr. Zador a past due insurance bill to pay on December 27, 1996 and that a later bill gave another thirty-day grace period, which appellant calculates as ending February 1, 1997 and which he claims that Mr. Zador failed to meet when he paid only a portion of the bill on February 27, 1997.
 {¶ 21} First, we reiterate that appellant's instructions dated December 18, 1996 merely stated that Blue Cross/Blue Shield health insurance was to be paid every two to three months at a cost of $620 per month, implying that a bill would be coming. The bill eventually received by appellee was addressed to appellant's post office box. However, appellant's instructions provide that the post office box was not to be checked by appellee until after February 1, 1997. (Appellant had entrusted another to check his mail prior to that date.) Thus, one could rationally conclude that appellant or his mail-forwarding agent caused the bill to get paid later than the February 1, 1997 date which appellant argues was the final date upon which payment could have been made.
 {¶ 22} However, appellant claims that appellee should have paid the bill in December 1996, when he gave Mr. Zador instructions with the bill attached. Appellee attempted to disprove appellant's claim that he gave all three bills to Mr. Zador on December 26, 1996. Specifically, appellee presented proof suggesting that the Sears bill was never given to Mr. Zador and that appellant himself made a payment on it on December 28, two days after he claimed he gave it to Mr. Zador to make a payment. (Tr. 75-76).
 {¶ 23} As appellee urges, it is reasonably inferable that if appellant was mistaken about this bill, then he may have been mistaken about the health insurance bill as well. As the magistrate concluded, there was some competent, credible evidence to suggest that appellant wrote a note to himself to pay certain bills, that he brought this note to the bank to get cashier's checks, that he decided to wait and then forgot to pay his health insurance bill or that he thought the bank would receive a health insurance bill sooner, and that he then altered documents and blamed the alterations and cancelled insurance on the bank.
 {¶ 24} Another important piece of evidence is Defendant's Exhibit I, which represents a letter from Blue Cross/Blue Shield dated December 31, 1996, stating that appellant's insurance had been canceled effectiveOctober 13, 1996 due to nonpayment. The letter continued, "Services are no longer available to you under your non-group contract."
 {¶ 25} Moreover, testimony established that October 13, 1996 was to be the first date of coverage; if the policy was canceled as of October 13, 1996, then it appears appellant had never made a payment to even initiate his coverage. In fact, appellant admits that the bill was already past due when he met with Mr. Zador on December 26, 1996. There were also suggestions that appellant may not have been eligible for coverage due to his plans for permanent relocation to Egypt.
 {¶ 26} Appellant did not feel it was necessary to present the testimony of a representative of Blue Cross/Blue Shield to explain the impact of the billing sent after cancellation or whether a full payment on February 27 of both the previous and current amounts would have retroactively saved the policy. There was no proof, besides appellant's self-serving assertions and assumptions, that full payment of the later bill by February 1, 1997 would have reenacted his coverage, retroactive to October 13, 1996 (which was important to him because he had back surgery in November 1996). Appellant opined that these facts are "totally irrelevant." (Tr. 192). Although this trial was only on liability and not damages, liability typically requires showing of the fact of injury and there is a question as to whether a duty exists to engage in a futile act.
 {¶ 27} Regardless, appellant does not dispute appellee's argument that if Mr. Zador's testimony is true, then the judgment on liability was correct. Thus, we turn to the law surrounding weight of the evidence and credibility determinations.
 {¶ 28} In determining weight of the evidence in such cases, we are guided by the presumption that the findings of the fact-finder are correct. Seasons Coal Co., Inc. v. City of Cleveland (1984),10 Ohio St.3d 77, 79-80. This is because the trier-of-fact occupies the best position from which to evaluate the witnesses and observe their demeanor, gestures, and voice inflections and to use these observations to weigh the witnesses' credibility. Id. at 80. Judgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Id., citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 280. In other words, when there exists competent, credible evidence supporting the findings of fact and conclusions of law of the fact-finder, the reviewing court does not substitute its judgment for that of the fact-finder. Id. at 80.
 {¶ 29} The magistrate disbelieved appellant's claims and believed those of Mr. Zador. Where there exists conflicting testimony and where either party's version of the events may be true, we do not pick and choose among the versions presented. State v. Gore (Feb. 17, 1999), 7th Dist. No. 94CA97. This choice is left to the trier-of-fact. {¶ 30} It is wholly reasonable to believe that appellant did not give Mr. Zador a Blue Cross/Blue Shield bill or instructions to immediately pay it on December 26, 1996, that Mr. Zador did not receive a bill until he started checking the mail as instructed after February 1, 1997, and that payment of the current billing amount on February 27, 1997 did not constitute a breach of fiduciary or contractual duties.
 {¶ 31} Accordingly, we find that there is competent and credible evidence supporting the findings and conclusions of the trier-of-fact herein, and we thus defer to those findings and conclusions. See Myersv. Garson (1993), 66 Ohio St.3d 610, 614.
 NON-JURY TRIAL {¶ 32} One of the other addressable arguments that we were able to fathom from appellant's brief is his claim that he was denied his right to a jury trial. He notes that he asked his attorney to seek a jury trial in September 2002 just prior to his withdrawal and that he filed his own request for a jury trial on January 7, 2003.
 {¶ 33} "The right to a trial by jury shall be inviolate. * * *." Section 5, Article I, Ohio Constitution. It is well-established, however, that this constitutional guarantee still permits the legislature or courts to set the procedure by which the right to a jury is obtained and to declare that the failure to conform to such procedure constitutes waiver. See Cincinnati v. Bossert Mach. Co. (1968), 16 Ohio St.2d 76, 79;Cassidy v. Glossip (1967), 12 Ohio St.2d 17, 19.
 {¶ 34} In this state, a jury demand must be filed by serving the opponent after commencement of the action and no longer than fourteen days after service of the last pleading directed to such issue. Civ.R. 38(B). Appellant failed to place a jury demand in his December 1998 complaint. Appellee did not seek a jury demand in its March 1999 answer. Appellant did not file his jury demand until January 7, 2003. This is unquestionably untimely.
 {¶ 35} The failure to serve the demand as required by this rule constitutes waiver of a trial by jury. Civ.R. 38(D); Kirchner v. EatonConstr. Co. (Oct. 12, 1995), 7th Dist. No. 94B46. Thus, the magistrate properly denied appellant's request for a trial by jury.
 TIMING OF MAGISTRATE'S DECISION {¶ 36} Another argument contained in appellant's brief that can be addressed by this court is appellant's complaint that the magistrate took over nine months to make a decision from the date of the hearing. As aforementioned, the case was heard on April 22, 2003, but the magistrate did not issue a decision until February 3, 2004, after appellant complained to the trial court.
 {¶ 37} Appellant correctly opines that this is a long time to wait for a decision. However, his remedy does not lie with this court after the fact. Instead, a writ of procedendo would have been the proper remedy to force the magistrate to issue a decision. See State ex rel. Dehler v.Sutula (1995), 74 Ohio St.3d 33, 35 (also mentioning a writ of mandamus). The failure to seek the writ of procedendo during the pendency of the decision precludes the complaining party from challenging the delay on appeal after the decision is made. See In re Davis (1999),84 Ohio St.3d 520, 524.
 {¶ 38} In the Davis case, there was even a statute that required the juvenile court to issue a decision within seven days. Although there was some dissension over whether the statute was directory or mandatory, the applicable procedural rule for the decision in this case, Civ.R. 53(E)(1), contains no time requirement and thus it seems that even the dissent in Davis would agree that a writ of procedendo is the method to remedy a magistrate's failure to rule within a reasonable time.
 {¶ 39} In fact, appellant attempted and succeeded in a more informal method or preparatory step, that of asking the trial court to review why the magistrate never ruled and/or reminding the magistrate that he failed to issue a ruling. As such, this argument is without merit.
 {¶ 40} As appellee proffers, even if there were some type of error (which there is not), an error in itself is not reversible in the absence of prejudice, which appellant does not attempt to explain as related to the delay. See, e.g., Hampel v. Food Ingredients Specialties, Inc.
(2000), 89 Ohio St.3d 169, 185 (holding, "an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him"); R.C. 2309.59
(instructing the reviewing court to disregard any error or defect which does not affect the substantial rights of the complaining party).
 CONCLUSION {¶ 41} Appellant's arguments for reversal are without merit. The judgment in favor of appellee is not erroneous or contrary to the manifest weight of the evidence. There was competent, credible evidence to support the court's decision that all of the essential elements for establishing liability for breach of a fiduciary or contractual duty were not proven by a preponderance of the evidence. Appellant waived his right to a jury trial by failing to file a timely jury demand. Finally, the magistrate's delay in releasing its decision did not prejudice the rights of appellant herein.
 {¶ 42} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.
[1] Appellant should note that we could have dismissed this appeal after disregarding his brief based on his repeated failure to file a proper brief. However, because we were able to find three assignments of error in his voluminous filing, we exercised our discretion to consider this case on its merits in the interest of justice.